## B. A. CARROLL STEVEDORE CO., Inc., v. MAKINDA.

Circuit Court of Appeals, First Circuit.
June 24, 1927.

No. 2087.

**1. Negligence** ⟨key⟩**136(18)—Negligence of stevedore company unloading lumber, injuring seaman, held for jury.**

In action, against stevedore company for injuries to seaman, struck while painting side of ship by timber falling from sling used in unloading, evidence *held* for jury on question of defendant's negligence.

**2. Trial** ⟨key⟩**191(7)—Instruction held erroneous, as assuming that injured seaman's presence at place of accident was condition, and not contributing cause, whereas question was for jury.**

In seaman's action against stevedore company for injuries sustained while painting side of ship, when struck by timber falling from sling, instruction *held* erroneous, as assuming that plaintiff's presence at place of accident was a condition only, and not a contributing cause, whereas that question was for jury under evidence.

**3. Negligence** ⟨key⟩**136(26)—That injured seaman was in place of danger in obedience to orders would not, as matter of law, relieve him from fault.**

Mere fact that seaman, when injured, was in place of danger in obedience to orders of his superior officer, would not of itself, and as a matter of law, relieve him from fault in being there.

Anderson, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Jr., Judge.

Action by George Makinda against the B. A. Carroll Stevedore Company, Inc. Judgment for plaintiff, and defendant brings error. Reversed, and cause remanded for a new trial.

Frank W. Knowlton, of Boston, Mass. (Charles C. Cabot and Choate, Hall & Stewart, all of Boston, Mass., on the brief), for plaintiff in error.

G. Philip Wardner, of Boston, Mass., for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an action of tort for personal injuries. There was a verdict for the plaintiff, upon which judgment was entered, and this writ of error prosecuted.

[1] The plaintiff was employed as a common seaman by the Luckenbach Steamship Company on its steamship K. I. Luckenbach, and at the time of his injury had been on this ship about 4 days. He had worked, however, on ships for about 10 years.

The defendant, a stevedore company, was employed in discharging lumber from the steamship at a wharf in Boston when the accident occurred.

The steamship was about 470 feet long, having its deckhouse amidships, extending 60 feet fore and aft. She had 8 hatches, Nos. 1, 2, 3, and 4 forward of the deckhouse, and Nos. 5, 6, 7, and 8 aft of the house. It was about 3 feet from the aft side of the house to the forward side of No. 5 hatch. The hatches measured about 23 feet fore and aft. The work of discharging the lumber began at 1 p. m. on the afternoon of September 5, 1924, and the discharge proceeded from hatches 1 to 6, inclusive, simultaneously. The lumber was random lengths of various sizes, includ-

ing boards, 2-inch plank, 3x4's, 2x3's, and the lengths varied from 10 to 30 feet. The ship lay alongside the wharf, and the distance between the ship and the edge of the wharf was about 18 inches. The height of the rail of the ship above the level of the wharf varied with the state of the tide. The distance on the morning of the accident (September 6th) was about 15 feet. The gangplank descended from a little forward of the middle of the deckhouse and ran aft down along the side of the ship. The method of discharge was as follows:

The lumber was taken out of the hold by booms at the forward end of each hatch, one being on the starboard and the other on the port side of the hatch. These booms were operated by winches. Attached to the booms were falls, which were shackled together, and slings were hooked to the shackles and lowered into the holds. The lumber was lifted out of the hold in the slings, 30 or 40 pieces at a time. The port boom was stationary over the middle of the hatch and the other over the side of the ship next to the wharf. The lumber in the sling was first drawn straight up out of the hold by the port boom and then drawn by the starboard boom over the side of the vessel and dropped into cars standing on the wharf parallel to the ship and about 3 or 4 feet from the edge of the wharf. A hatchman stationed on the ship, where he could see what took place on the wharf between the car and the side of the ship, gave the signals to the winchman for the various operations of the winches in the discharge of the lumber, and the men on the cars took it as it reached a car.

The rule of the ship when in port was for the chief officer to give his orders to the boatswain and for the latter to give the orders to the crew. On September 5, the chief officer directed the boatswain to chip and red-paint all rough spots along the face of the ship and touch up any spots where it wanted to be touched with black paint and, on the afternoon of that day, the boatswain told the plaintiff to get some black paint and go down and paint the side of the ship, to work in the middle of the ship, not over at Nos. 4 or 5. At that time the cargo was being unloaded from the first 6 hatches. The plaintiff went to work amidships, standing on the wharf painting the ship's side. The evidence was in conflict as to whether he remained amidships all that afternoon or a part of the time worked close to or abreast No. 5 hatch. There was evidence that he was told to keep away from No. 5 hatch, but remained there until removed at the request of McHugh, an employee of the

defendant, who notified the chief officer of the ship that he would stop work if he was not removed. At that time the chief officer notified the boatswain to have the plaintiff paint at Nos. 7 or 8 hatches, but the boatswain told the plaintiff to paint amidships and he worked amidships near the gangway during the remainder of the afternoon.

When the plaintiff quit work on the night of the 5th of September the middle of the ship was painted, but from the point where he finished to No. 5 hatch, a distance of about 6 feet, remained unpainted. On the following morning (September 6th) the boatswain told the plaintiff to go to work where he left off last night. The plaintiff went to work at 8 a. m., starting in where he left off on the afternoon of the 5th. The stevedores had not at that time begun to unload at No. 5 hatch. It took the plaintiff about twenty minutes to finish his work from where he left off to No. 5 hatch. At the time of his injury he had just completed this work and was looking for the boatswain as he desired permission to go elsewhere to work, for he thought the place was dangerous. While he stood there a timber fell and broke his leg. The stevedores began discharging lumber from No. 5 hatch that morning after he went to work, but whether the lumber discharged at the time of the accident was the first sling discharged that morning was in dispute. The accident occurred about 20 minutes after he began work.

A witness for the defendant, its boss at No. 5 hatch, testified that he saw Makinda working under the hatch about 5 minutes before the accident and told him to get out of there, and that he could have told his hatchman not to send out any more lumber over the side until the plaintiff got away, but did not. There was other testimony tending to show that the plaintiff was warned that morning to go away from No. 5 hatch. The plaintiff, however, denied that any one warned him the morning of the accident.

There was also evidence that the sling of lumber being discharged at the time of the accident contained some 30 or 40 pieces; that as it came up out of the hold over the hatch a piece was hanging from the sling; that the chief officer of the ship stood on the saloon deck above No. 5 hatch, and seeing this, and fearing that the lumber might fall back and injure some one in the hold or on the deck, shouted a warning to the stevedores to look out below, and as the sling was swung out he saw the piece fall, hit the gunwale of the ship, and bounce off to the dock. This was the piece of timber that hit the plaintiff.

Another witness for the defendant, em-

ployed on the car, testified that he saw the load that caused the injury "as it was coming over the coamings at the side of the ship," with "this piece sliding out, and he hollered," and then "he heard the hollering"; that he "did not remember whether it hit anything before it hit Makinda or not." The hatchman at No. 5 testified that it was his duty to signal the winchman to stack the load over the side of the vessel to the car; that on the morning of the 6th he saw the plaintiff working right at the hatch, and told him to go away, but that he kept on painting; that he saw a 2-inch piece of lumber fall out of the sling, and hit the plaintiff, but that, when the load came out of the hatch, and when he signaled to the winchman to stack the load, he saw no lumber that was falling or that looked loose.

From the foregoing evidence we think it could reasonably be found that on the morning of the accident the plaintiff went to work painting at or near No. 5 hatch before the stevedores began discharging lumber; that the hatch boss and hatchman saw him there, and had reason to believe that he would remain there until directed by the ship's officers to go elsewhere; that notwithstanding this, and notwithstanding the hatchman and the other stevedores had been warned that the load or sling of lumber in question, as it came out of the hatch, was in a dangerous condition, the hatchman caused it to be stacked over the side of the ship, causing the accident, instead of heeding the warning and readjusting the lumber in the sling before stacking it over, and without warning the plaintiff that the load was to be sent over; and that the District Court did not err in submitting the case to the jury.

[2] There was adequate evidence that the defendant was negligent. And while the evidence as to whether the plaintiff's presence at the time and place of injury was a contributing cause was conflicting, there was also evidence from which the jury might find that his presence there, if careless, was a mere condition, and not a contributing cause, for the defendants could be found to have had the last opportunity of avoiding the accident before stacking the load over the side of the ship.

But whether the plaintiff's presence at the place of the accident was a mere condition, or a contributing cause, involved findings of fact, depending upon the view the jury took of the evidence. It appears from an examination of the charge that the jury were in substance told that the plaintiff's presence at the time and place of the accident was a mere condition, and that the only question was whether the defendant was negligent. In the portion of

the charge to which the defendant excepted, the court instructed the jury as follows:

"Now, he [the stevedore] was bound to exercise reasonable care, I repeat, to do that job with reference to the situation which the presence of that man created, and you may say this: That if it wasn't practical to move that lumber out of the hold and onto the car in a commercial way, without unduly endangering a man at work there, the defendant could have stopped the work and declined to go on. The situation created, if you take that view, would be, to put an analogy, very like this: Suppose you were building a house, Mr. Foreman, and there was a certain place where a plumber had to work and a carpenter had to work —in a bathroom, we will say. The carpenter wanted to be fitting some of the woodwork, and the plumber wanted to work in there fixing a trap, and the plumber got there first. The carpenter had no right to kick out the plumber. He would have to wait until the plumber got through. On the morning in question here apparently the painter came to paint before the men came around to discharge the cargo from the vessel, so that, when they tackled onto their first load of lumber, he was already at work; and I leave their conduct for you to judge, under all the circumstances—to say whether in what they did they carried on their business in a reasonably careful and prudent way. To put it exactly, whether the injury which the plaintiff undoubtedly received was the result of negligence on the part of those employees in discharging the lumber?"

By this instruction the court in substance told the jury that, as the plaintiff went to work before the stevedores, they would have to wait until the plaintiff got through, if their method of doing the work created a dangerous situation, or suffer the consequences. It was equivalent to an instruction that the plaintiff's presence at the place of the accident was a condition, and not a contributing cause, and that the liability of the defendant depended entirely upon whether it was in the exercise of due care in discharging the lumber, knowing that the plaintiff was in a position of danger near the hatch. We think this instruction was erroneous.

The jury should have been instructed that the burden of proof on the question of contributory negligence was on the defendant, and that the plaintiff could not recover, if he was negligent and his negligence contributed to cause his injury, but that they might find that his presence beside the hatch, if careless, was not a contributing cause, provided they found that the defendant's stevedores

were aware of his presence there, and had the last clear chance of avoiding the accident by readjusting the lumber in the sling before stacking it over the side of the ship, or by taking such other action as they reasonably might to avoid the accident. See Inland & Sea Board Coasting Co. v. Tolson, 139 U. S. 551, 557, 558, 559, 11 S. Ct. 653, 35 L. Ed. 270; Grand Trunk Railroad Co. v. Ives, 144 U. S. 408, 428, 429, 12 S. Ct. 679, 36 L. Ed. 485; Cavanaugh v. Railroad, 76 N. H. 68, 79 A. 694, and cases there cited.

[3] It has been suggested that the question of contributory negligence was submitted to the jury. This is not so. After stating that the plaintiff could not recover if he was working in front of the hatch "against orders" of "his superior officers" in "a place of danger where he [knew] it [was] very perilous, and where he [had] been ordered not to go," the jury were told, "No such question is put to you here." In view of this, which was the only reference made to the question, the jury undoubtedly understood, and had the right to understand, that no question of contributory negligence was submitted to them for consideration. In giving this instruction, the court evidently took the view that the plaintiff was not and could not be found to be negligent, if he went to work in front of the hatch in obedience to the order of his superior officer (as the evidence showed he did), although he knew the place was dangerous. The fact that he went to work in a place of danger in obedience to orders of his superior officer would not, of itself and as a matter of law, relieve him from fault in being there. His presence there in obedience to orders was simply one of the facts or circumstances to be considered by the jury in determining the plaintiff's care and the defendant's fault, the latter being aware of his presence in a place of danger.

We do not find it necessary to consider the other questions raised.

The judgment of the District Court is vacated, the verdict is set aside, and the case is remanded to that court for a new trial.

ANDERSON, Circuit Judge (dissenting). I concur in the view of the majority that the plaintiff made out a case for the jury. I dissent from the conclusion that there was a mistrial, and that this personal injury case, involving nothing but damages for a broken leg, should be sent back for another trial.

The case was submitted to the jury on special issues, and for a general verdict in the alternative form approved by this court in Automatic Pencil Sharpener Co. v. Boston Pencil Pointer Co. (C. C. A.) 279 F. 40. The sole object of taking verdicts in this alternative form is to avoid new trials, except under very rare and unusual circumstances, which do not obtain in the present case.

The defendant's contentions, as now urged, are directed merely against the answers to two of the special issues (which in the view we all take of the case are immaterial), and to the proposition that "the contributory negligence of the plaintiff was as a matter of law a complete defense to the action"; that therefore this court should now order judgment for the defendant under the power accruing under the alternative verdict. This is the only real question before this court. As we are all agreed that contributory negligence was not as a matter of law made out, the judgment below should be affirmed.

The point on which the majority opinion goes is not even argued by defendant's experienced and learned counsel. No new trial is sought by defendant; it asks for judgment on this record. No assignment of error involving the adequacy and accuracy of the charge on contributory negligence is, on fair analysis of the record, before this court. Defendant's counsel submitted requests for instructions; among others, not now material, the untenable proposition that "the defendant owed no duty to adapt its work or carry on its work with reference to the safety of the plaintiff."

At the close of the charge the court saved defendant's exceptions so far as the requests were not covered by the charge, and the record proceeds:

"The defendant also excepted to that portion of the charge in respect to the possibility that the jury might *find that the defendant was negligent in going on with the work until the plaintiff had been removed.*"

This exception thus saved was made the basis of the fifth assignment of error, in which the excerpt from the charge, quoted in the majority opinion, is recited, and which then proceeds: "The defendant submits that this was not a correct statement of the law as applicable to the evidence in the case."

It thus clearly appears that the exception to this part of the charge is directed solely to its application to the defendant's negligence, and not at all to the plaintiff's contributory negligence. The only exception to the charge, on the question of contributory negligence, was to the court's refusal to order a verdict for the defendant on that ground. It was not suggested to the trial court that, if contributory negligence was for the jury at all, the instructions given were not accurate and adequate.

Otherwise stated, the fifth assignment of error is, in effect, nothing but a reassertion of the defendant's theory that it owed no duty to the plaintiff in the conduct of its stevedoring work.

But the question of plaintiff's contributory negligence was submitted to the jury under a brief instruction as follows:

"Now we have this man there. If he is working in the front of this hatch, if he is working there against orders, if he has been told not to go there by his superior officers, he has no business there; and if he disobeys orders, and goes into a place of danger, where he knows it is very perilous, and where he has been ordered not to go, while no such question is put to you here, I don't need to say now that such a person cannot recover, if he suffers the consequences of his own disobedience and recklessness."

This was sufficiently favorable to the defendant. Plaintiff might have complained that it did not state that the burden of proving contributory negligence was on the defendant. Duggan v. Bay State Ry., 230 Mass. 370, 377, 119 N. E. 757, L. R. A. 1918E, 680; Central Vermont Ry. Co. v. White, 238 U. S. 507, 512, 35 S. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252. But here is an explicit instruction, to the effect that, if the plaintiff knowingly put himself into a place of danger, where he had no business to be and contrary to orders, he could not recover. This in substance was, except as to burden of proof, the instruction the majority hold should be given at a new trial. The statement that "no such question is put to you here," read with the context (not quoted), simply means that there was no such special issue submitted— not that contributory negligence, as a question of fact, was not before the jury.

How the quoted instruction on the defendant's negligence can be said to be "equivalent to an instruction that the plaintiff's presence at the place of the accident was a condition, and not a contributing cause," I cannot comprehend.

I cannot assent to upsetting a just verdict on a technical point which is not before this court. Of course, this court may, under rule 11, deal with "a plain error not assigned." But this is a power that should be exercised sparingly and cautiously, and only to prevent gross injustice, or to vindicate some principle of general importance, such as I thought presented in Charlie Hee v. United States (C. C. A.) 19 F.(2d) 335, May 17, 1927, or perhaps when the court, through its receiver, is a trustee, charged with affirmative duties of administration and distribution. Generally,

the rights of litigants are better enforced, and the duties of counsel, of trial court and of appellate court, better performed, by the reviewing court's limiting itself to dealing with the contentions presented by the competent counsel selected by the parties in real interest.

On this record, I can see no justification for this court's ordering a new trial which neither party wants.