### HADDOCK v. NORTH ATLANTIC & GULF S. S. CO.

No. 2982.

United States District Court
D. Maryland.
Dec. 20, 1948.

Paul Berman and Eugene Alexander, 3d., both of Baltimore, Md., for libellant.

Francis E. Pegram, Jr., (of Eckhardt & Pegram) of Baltimore, Md., for respondent.

CHESNUT, District Judge.

This is a libel in personam by a seaman to recover damages for personal injury, maintenance and cure allegedly resulting from negligence of the shipowner in failing to provide a safe place for work and safe equipment for the seaman. 46 U.S. C.A. § 688. The case has been submitted for final determination upon the pleadings, evidence and arguments of counsel. From the evidence I make the following findings of fact:

The libellant is a seaman of ten years or more experience, and is about 46 years of age. On November 15, 1946 he was employed on the respondent's ship on a voyage from the United States to Trieste. While in the Mediterranean Sea he was ordered to do some chipping of rust. While performing this work one or two particles of rust accidentally got into his right eye and to this he now attributes a cataract which is slowly but substantially impairing the vision of that eye. He specifies negligence on the part of the ship in not furnishing him with goggles while doing the work. He says he asked the boatswain for them but was told that they were not immediately available and that the boatswain would look for them and give them to him later. As a fact, I find that there were adequate goggles on shipboard and the libellant could have obtained them upon application to a superior officer of the ship, as, for instance, the First Mate. But the libellant says that he did not feel at liberty to make the demand for them in view of the boatswain's order.

After receiving the rust particles in his eye he at once complained and was given some boracic acid by an officer of the ship and one or more particles of rust were removed from his eye. There was no particular force occasioned by the settlement of the rust in his eye. Apparently he asked for an opportunity to consult a doctor on shore and there is conflict in his evidence and that of another witness whose deposition was taken as to whether or not this opportunity was afforded him. When the ship next made port at the Island of Cyprus he did consult a doctor whose deposition has not been taken but whose memorandum of the result of the examination was filed in evidence which I found to be quite inconclusive.

When the ship returned to Baltimore on January 19, 1947 the libellant went to the

local Marine Hospital for further eye examination. Glasses were prescribed. He was examined from time to time without diagnosis of any traumatic condition of the eye, until July 22, 1947. In the meantime he made claim upon the respondent and went to the office of the Company in New York. They sent him to a Dr. Dugdale who was an experienced surgeon in the treatment of traumatic conditions. Dr. Dugdale took the history of his complaint and examined his eyes on February 7, 1947. He reported that there was no trouble with the man's eyes. His deposition has been taken at some length and is to that effect.

In the meantime, or shortly thereafter, the libellant employed Messrs. Hillman and Hillman, experienced admiralty lawyers in Baltimore, to press his claim. They endeavored vigorously by correspondence and telephone communications with a representative of the Company in New York to obtain a settlement. The Company steadfastly refused to make any substantial payment but had paid $49 to the plaintiff for maintenance and cure and offered to pay $150 additional for full release from all claims. After repeated conferences with his attorneys he agreed to accept this settlement and gave a release. At the time he said he was in pressing need of money owing to accumulated debts and the sickness of his wife. He executed the release which was offered in evidence, in the presence of his attorneys and acknowledged it before one of them who is a notary public, on July 15, 1947. The Company's check for $150 was received by his attorneys, Hillman and Hillman, on or before July 23, 1947, and on that date the check was cashed and $100 paid to the libellant, the attorneys retaining the balance of the $150 for their disbursements for telephone calls, etc., leaving them a balance of about $35 as a fee. The evidence of the senior partner made it very clear that the settlement was the free and voluntary act of the libellant not induced in any way by pressure either from his own attorneys or from the respondent's attorney. In fact the whole matter was handled for the libellant by his own attorneys. At the time of the settlement the attorneys had filed and there was pending in this court the plaintiff's suit against the respondent, Admiralty

Case No. 2131, in which the libel made a claim for the substantial amount of $7500 damages for the accidental injury to the plaintiff's eye, maintenance and cure. When the plaintiff signed the release he also signed an order later filed in the case by his counsel, whereby the case on the docket was entered "Agreed, Settled and Satisfied upon payment of costs by respondent".

The libellant had continued from time to time on frequent occasions to make visits to the Marine Hospital and to receive advice from them. He says that on July 23rd he was awaiting a further report from the Marine Hospital, an abstract of which he had asked for but which had not been given to him; but that later that day he called at the hospital and received the report which, for the first time, indicated that he had a slowly forming cataract on the right eye. He says that he then went to see his attorneys and told them of this new development and asked what could be done about it. He puts the time of this visit at only a day or two after the settlement. Mr. Hillman said that it was a substantial time thereafter, possibly two months. At all events Mr. Hillman advised him that he considered the case closed so far as he was concerned, that he did not feel at liberty to attack the release which he had negotiated fairly for his client. Mr. Hillman suggested that if further action was to be taken the libellant should see other counsel. This the libellant did and in consequence thereof the present suit was filed in this court on November 29, 1947, Admiralty No. 2982.

The critical issues in the case are—

1. Has the libellant shown by a preponderance of the evidence that the injury to his eye from the rust was due to the negligence of the respondent;

2. Has the libellant shown by a preponderance of the evidence that the present condition of his right eye was proximately due to the chippings of rust, and

3. If both of these facts are found in favor of the libellant, was the release valid and binding.

I will discuss these three issues in their order with further reference to the facts found from the evidence.

■ 1. As to the alleged negligence; and in this case was there contributory negligence of the libellant although if so it would only affect the amount of the recovery and would not be a bar to any recovery. As I have said, the evidence shows that the ship did have goggles on board and they could have been procured if the libellant had insisted thereon. In this connection he was an experienced seaman and particularly the importance of having goggles for such work had been brought to his attention in 1936 when he was employed on another ship and while chipping rust without goggles had sustained an injury to his left eye, for which he brought suit against the shipowner but lost the case, as he says, when it was found the ship had goggles on board. It does not appear what was the extent of the damage to his left eye claimed by the libellant in that case. I refer to this only as bearing on the libellant's possible contributory negligence in not insisting upon having the goggles before starting the work.

■ Judging the case from the aspects most favorable to the libellant on this point, I have concluded that the order or directions of the boatswain to him to go ahead with the work pending further search for goggles constituted some negligence on the part of the ship. It is, however, a rather narrow point in view of the fact that the libellant was an experienced seaman and had had a similar unfortunate experience years before. He should have insisted upon having the goggles or not doing the work until the goggles were obtained; but his explanation is that his practical situation on the ship required him as a matter of policy to obey the directions of the boatswain and go ahead with the work temporarily. At all events I find that there was some negligence on the part of the boat in this respect and any contributory negligence of the libellant would not be a bar to this suit.

2. As to the causal relation between the rust in the eye and the present cataract, the medical evidence is conflicting. We have the evidence of Dr. Dugdale and of Dr. Angus MacLean for the respondent to the effect that the cataract is not due to any traumatic condition and not due to particles of rust in the eye. On the other hand we have the evidence of a Dr. Jones of the Public Health Service to the effect that in his opinion the rust "*could*" have caused the cataract although he was not able to express an affirmative opinion either that it did or did not. We also have the evidence of a physician, privately employed for the libellant, a Dr. Snyder, who saw the libellant only once on November 12, 1947, that in his opinion the rust could, and that he believed did cause the subsequently developing cataract.

■ The judicial problem here involved is to weigh this conflicting evidence to determine whether the libellant has sustained the burden of proof or persuasion to show that the present existing cataract was caused by the particles of rust. We have the opinion of two experienced medical men that the particles of rust in this case had no causal relation to the subsequent cataract. On the other hand, we have the opinion of a possibly less interested oculist (but less experienced in period of service) that the rust *could* have caused the cataract; plus the opinion of another oculist to the effect that he believed the cataract was caused by the rust. In evaluating this evidence I have considered the qualifications of the respective witnesses and the reasons given for their opinions. My conclusion of fact is that the libellant has not sustained the burden of persuasion on this point. On the contrary, I find the opinion of Dr. MacLean to be more persuasive. He is a highly qualified eye specialist and for some years has been Assistant Professor of Ophthalmology at the Wilmer Institute of the Johns Hopkins University. His opinion, supplemented by that of Dr. Dugdale, an experienced traumatic surgeon, is definitely that in this case the cataract was not due to particles of rust in the eye; but in their opinion to some general metabolic or nutritional condition of the libellant and not to a traumatic injury which they said could only have been caused by a severely struck blow directly affecting the lens of the eye. The contrary opinion of Dr. Snyder for the libellant was based on the reasoning that the libellant sustained a marked irritation in his eye for a long period of time from which developed symptoms pointing to an inflammatory condition, difficult to detect on examination of the eye, but which

"long continued finally caused the slowly developing cataract". Assuming that this view is scientifically plausible, there is no satisfactory evidence in this case that such an inflammation of the eyes did result from the original irritation from the rust particles. On the contrary, numerous examinations of the libellant's eyes over a period of several months prior to the discovery of the cataract on July 2, 1947, gave no indication of the existence of a continued irritated or inflammatory condition of the right eye. The several oculists who have examined the libellant are in substantial agreement that at the present time his vision in the left eye is, with proper glasses, practically normal; but there is a loss of vision of 80% or more in the right eye due to the slowly forming cataract; and presently an operation for removal of the cataract in the right eye is not advisable because the patient still has good vision in the left eye and if the cataract on the right eye is now removed and glasses substituted, the patient would still have unilateral and not bilateral vision.

3. The finding of fact that by a preponderance of the evidence the libellant's present cataract was not caused by the respondent's negligence, makes it probably unnecessary to decide the third question in this case, that is, the effect of the release. However, as the evidence upon the subject has been fully developed and the question argued by counsel, it seems appropriate to make a finding thereon, in the event of an appeal. The issue here presents a mixed question of law and fact. The burden of proof or persuasion as to the validity and binding effect of the release is upon the respondent. In the recent case of Garrett v. Moore-McCormack, 317 U.S. 239, 248, 63 S.Ct. 246, 252, 87 L.Ed. 239, the holding of the Supreme Court upon this subject was summarized by Mr. Justice Black in the following sentences:

"We hold, therefore, that the burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights. The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding."

But when this required burden of proof has been met, a seaman's release is valid and binding. Sitchon v. American Export Lines, 2d Cir., 113 F.2d 830, certiorari denied 311 U.S. 705, 61 S.Ct. 171, 85 L.Ed. 458; (cf. on other facts, Hume v. Moore-McCormack, 2d Cir. 121 F.2d 336, 347, certiorari denied 314 U.S. 684, 62 S.Ct. 188, 86 L.Ed. 547; and Bonici v. Standard Oil Co., 2d Cir. 103 F.2d 437, certiorari denied 308 U.S. 560, 60 S.Ct. 106, 84 L.Ed. 471); Ames v. American Export Lines, D.C., 41 F.Supp. 930; United States v. Johnson, 9 Cir., 160 F.2d 789, 1947 A.M.C. 765, 775, affirmed in part and reversed in part on other grounds, 333 U.S. 46, 68 S.Ct. 391; Little v. United States, 1946 A.M.C. 611; The Francis Parkman (Schlitzkus v. United States), D.C., 80 F.Supp. 22, 1948 A.M.C. 688.

In applying this well established admiralty law to the evidence in this case, I find and conclude that the release given by the seaman in this case was his free, intelligent and voluntary act, and the formal and intended to be final settlement of a then pending case in this court. And in making that settlement of a disputed claim the libellant had at the time competent and faithful advice from his own lawyer and was being given professional optical advice by physicians of or connected with the United States Marine Hospital in Baltimore. He was personally a man of mature years and fair intelligence and from previous experience was not unfamiliar with the subject of releases in settlement of claims for personal injuries, as it developed in his own evidence that he had made such settlements in three or four prior cases.

Indeed the fairness of the conduct of the libellant's own lawyers and the lawyer for and other representatives of the respondent are not either criticized or questioned in this case. The only consideration advanced in the attack on the release is the fact that at the time of making the settlement on July 23, 1947, the libellant did not know that on a previous day an oculist at the Marine Hospital had discovered the existence of a

cataract on his right eye. And it is also conceded that this fact was not known to the respondent at that time. But in connection therewith it is to be noted that in the admiralty suit which was then settled and for which the release was given, the libellant had claimed very substantial damages ($7500) for the accident to his eye; and the consistent position of the respondent was that he had sustained no substantial or permanent injury to the eye by the accident. Furthermore, at the time of accepting the settlement the libellant was still complaining to eye doctors at the Marine Hospital regarding trouble with his vision and was in fact then still awaiting a written report or abstract from the hospital which, he says, he did not receive until after settlement had been made and the release given. The release, filed in evidence, is a general release for all damages then existing or thereafter arising—

"by reason of any matter or thing whatsoever, from the beginning of the world to the date of these presents, particularly, but not exclusively, for injury sustained by me while in the service of the SS Lorenzo de LaValle as ablebodied seaman on or about November 15, 1946 when I sustained injury to my right eye while chipping rust off the ventilator at No. 2 Mast house and some foreign matter struck my right eye while not wearing goggles."

It can be assumed that the monetary consideration paid for the release, $199, was not sufficiently adequate compensation for the injuries sustained if they had caused the cataract. It is true also that the libellant did not know at the time of making the settlement that he had a cataract on the right eye; but nevertheless he had made claim for $7500 damages in the then pending suit, was still complaining about his eye and awaiting further report from the Marine Hospital. The consistent contention of the respondent had been, was then and has continued to be, that the trouble with his right eye was not caused by the accident; and the preponderance of the evidence in the second suit now fully heard supports the respondent's contention.

In Sitchon v. American Export Lines, supra [113 F.2d 833], opinion by Circuit Judge Augustus N. Hand, it was said:

"The release here contemplated a settlement of claims for all present and future damages arising out of the accident. The settlement does not bear the slightest taint of fraud and if there was a mistake as to the nature or extent of the injuries, and the judge in the court below seems to have thought there was none, the release accompanying the settlement fairly arrived at was a bar to the plaintiff's action".

For these reasons my conclusion of law is that the libel in personam under section 33 of the Merchant Marine Act, 46 U.S. C.A. § 688, must be dismissed. Counsel may present the appropriate order in due course.