**N. M. PATERSON & SONS LIMITED, a corporation, Defendant and Third-Party Plaintiff,**

v.

**NICHOLSON CLEVELAND TERMINAL CO., Third-Party Defendant.**

**Civ. No. C68-157.**

United States District Court, N. D. Ohio, E. D.

March 15, 1971.

Scott H. Elder and Richard C. Binzley, Cleveland, Ohio, for plaintiff.

Glenn J. Seeley and Robert Dougherty, Cleveland, Ohio, for third-party defendant.

## MEMORANDUM

KRUPANSKY, District Judge:

This is a civil action in admiralty by a vessel owner, the defendant above and third-party plaintiff of this action, seeking indemnification for a settlement made with a longshoreman injured on the plaintiff's vessel. The stevedore employer of the longshoreman is the third-party defendant, Nicholson Cleveland Terminal Co.

On November 11, 1967, plaintiff's vessel Sarniadoc left Port Alfred, Quebec, with a cargo of newsprint to be unloaded at Cleveland, Ohio, and Detroit, Michigan. The cargo was stowed both above and below deck. The deck cargo was stowed on hatches numbers two and three. While crossing Lake Ontario, the Sarniadoc encountered heavy weather and experienced severe rolling and pitching in high seas. As a result of the heavy weather the deck cargo shifted slightly from its original position. During the unloading operation in Cleveland, Leo Yanik, supervisor for defendant stevedore company, was injured by a falling roll of newsprint weighing approximately 1600 pounds. The vessel owner negotiated an out of court settlement with Leo Yanik for his injuries and thereafter on the following facts seeks indemnification from the defendant stevedore company.

When the Sarniadoc arrived in Cleveland, on November 16, approximately two days before unloading commenced, Leo Yanik, supervisor for the defendant, noted an apparent sag in the center and a bulge on the side of the tarpaulin covering the deck cargo stowed on hatch number three. Yanik testified at trial that the appearance of the tarp covering the cargo on hatch number three indicated to him that the cargo had shifted. He also testified that he

informed John Luke, the union representative at the terminal, of these conditions and that "they would have to be careful when they got to it."

Because of the rainy weather in Cleveland, unloading of the Sarniadoc was delayed until the morning of November 18. On that morning, Yanik directed the other longshoremen under his supervision and control to first unload holds numbers one and four, and thereafter to unload the above deck cargo on top of hatches two and three.

About 9:00 a. m., after noticing that the cables securing the deck cargo on hatch number three had been removed, Yanik inquired of the first mate "if it was safe removing those cables." The first mate thereupon lifted a corner of the tarp covering the rolls thus permitting Yanik to view the shifted cargo. The mate also instructed him to direct his men to use only the starboard passageway. Yanik denied knowledge of these instructions. Yanik admitted that during his cursory inspection he noticed that the outermost aft roll had shifted upward, positioning itself on top of its original dunnage bracing. He also noticed that additional wedges had been inserted under the roll.

At trial, expert testimony of Steve Rawsky, supervisor of Commercial Terminals Company, a newsprint stevedoring company in Detroit, Michigan, related that accepted unloading practice for newsprint rolls under normal conditions, absent shifted cargo, is to remove deck stowed rolls before proceeding to the holds because the deck cargo is nested on the bilge (side) which makes it susceptible to rolling. This condition may be aggravated by the listing of the ship during the removal of hold cargo.

Rawsky testified further that an obviously shifted deck cargo of newsprint rolls would warrant a thorough inspection to determine the extent and condition of the shifted cargo. Safe unloading procedure would require that the dangerous condition be immediately eliminated by off-loading the top rolls first. This action would relieve the outward and downward pressure exerted on the outermost bottom rolls of the four tiered nested pyramid of newsprint.

Aware of the condition of the cargo and contrary to the mate's instructions, Yanik continued to use the port passageway in the immediate area of the shifted cargo. Approximately 45 minutes after his discussion with the mate, as Yanik was walking on the portside of the vessel in the immediate area of hatch number three, the roll which he and the mate had viewed and discussed earlier broke loose throwing Yanik to the deck and pinning his left foot.

In a resulting suit between Yanik and the owners of the Sarniadoc, a pretrial settlement of $45,000 was negotiated between these parties in satisfaction of all of Yanik's claims. It is this sum of money plus attorneys' fees that plaintiff seeks to recover by way of indemnity from the stevedore.

■■ In a series of cases, outlined in Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960), the courts have provided an increasingly heavy burden upon shipowners to supply a seaworthy vessel. Because of this obligation of seaworthiness, the owner of a vessel may be held liable for hazards aboard a vessel which longshoremen themselves create or have failed to avoid through their own negligence. The courts also hold that the stevedore is liable to indemnify the vessel owner for damages sustained as a result of the stevedore's breach of its warranty of workmanlike service which, in turn, makes the ship unseaworthy. Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). This "warranty may be breached when the stevedore's negligence does no more than call into play the vessel's unseaworthiness." Crumady v. The

Joachim Hendrik Fisser, 358 U.S. 423, 429, 79 S.Ct. 445, 3 L.Ed.2d 413 (1958).

■ There is an implied warranty under the law whereby the stevedore represents itself, and is assumed to be an expert in the work of loading and unloading a vessel. Hugev v. Dampski-saktieselskabet International, 170 F. Supp. 601 (S.D.Cal.1959), aff'd, 274 F. 2d 875 (9th Cir.), cert. denied, 363 U.S. 803, 80 S.Ct. 1237, 4 L.Ed.2d 1147 (1960). This warranty of workmanlike service is breached where the stevedore has supplied longshoremen who fail to perform the required service in a workmanlike manner. McLaughlin v. Trelleborgs Angfartygs A/B, 408 F.2d 1334, 1337 (2 Cir.), cert. denied Golten Marine Co. v. Trelleborgs Angfartygs, A/B, 395 U.S. 946, 89 S.Ct. 2020, 23 L.Ed. 2d 464 (1969).

As supervisor of the longshoring operation, it was Yanik's duty to ensure that the ship and cargo were safe for unloading. His knowledge is imputed to the stevedore company. In a dangerous situation, the stevedore may elect either to take the necessary steps to remedy the unsafe condition itself, or remove its men from the ship until such time as the ship and cargo have been placed in a safe condition for unloading. Burrage v. Flota Mercante Grancolombiana, S. A., 431 F.2d 1229 (5th Cir., 1970). Yanik, aware of the existing conditions and circumstances, continued unloading the cargo and using the port passageway in the immediate vicinity of the shifted deck cargo.

■■ Yanik was or should have been fully aware of the dangerous condition of the cargo. Yanik continued working in the dangerous area without taking any steps to correct the condition. This conduct constituted a breach of the stevedore's warranty of workmanlike performance. Mortensen v. A/S Glittre, 348 F.2d 383 (2d Cir. 1965). Yanik's conduct was also a violation of the Federal Safety and Health Regulations for Longshoring which is set out in full in the margin.[1] The violation of this statute prohibiting longshoremen from passing fore and aft of unsafe deck cargoes constitutes negligence per se, which in turn is a breach of the stevedore's warranty of workmanlike performance.

■ Indemnity has been determined in a recent 6th Circuit case, Tankrederiet Gefion A/S v. Hyman-Michaels Company, 406 F.2d 1039 (6th Cir. 1969), which held that when a third-party defendant refused to approve settlement tendered by defendant and refused to undertake a defense with hold harmless agreements, the issues to be proved in a subsequent indemnity suit by a defendant against a third-party defendant would be potential liability and reasonableness of settlement. Defendant in the instant case is in an analogous position. Having refused to participate in the previous action between Yanik and the shipping company, defendant in this case is limited to the issues of potential liability and reasonableness of settlement.

The evidence in its entirety supports the findings that:

(1) Defendant breached its warranty of workmanlike performance in failing to unload the vessel Sarniadoc in a safe manner;

(2) The $45,000 settlement made with Yanik was reasonable;

(3) The attorney fees of $16,857.50 paid by the owners of the vessel were reasonable.

An order will be entered indemnifying plaintiff in the amount stated above together with interest at 6% from the dates of respective payments.

This opinion shall constitute the Court's Findings of Fact and Conclusions of Law; Fed.R.Civ.P. 52(a).

[1]. "Employees [longshoremen] shall not be permitted to pass fore and aft over or around deck loads unless there is a safe passage." 29 CFR 1504.33.