Jose Virella **RIVERA** et al., Plaintiffs, Appellees,

v.

**REDERI A/B NORDSTJERNAN** et al., Defendants, and Third Party Plaintiffs, Appellants,

v.

**INTERNATIONAL SHIPPING AGENCY, INC.**, et al., Third Party Defendants, Appellees (two cases).

Nos. 71-1258, 71-1259.

United States Court of Appeals, First Circuit.

Heard Feb. 1, 1972.

Decided March 15, 1972.

Vicente M. Ydrach, with whom Hartzell, Fernandez, Novas & Ydrach, Hato Rey, P. R., and Haight, Gardner, Poor & Havens, New York City, were on brief, for Rederi A/B Nordstjernan and others.

Jaime Pieras, Jr., Hato Rey, P. R., with whom Pieras & Torruella, Hato Rey, P. R., was on brief, for International Shipping Agency, Inc., and others.

Harvey B. Nachman, San Juan, P. R., with whom Nachman, Feldstein & Gelpi, San Juan, P. R., was on brief, for Jose Virella Rivera and others.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

The four plaintiffs, longshoremen in the port of San Juan, brought damage actions against the owner and operator of the vessel M/V Brasilia for injuries resulting from carbon monoxide poisoning. These federal diversity suits alleged negligence and unseaworthiness as grounds for relief. The defendant, as third party plaintiff, impleaded the International Shipping Agency, Inc. and its insurer, seeking indemnity on the grounds of negligence and unworkmanlike performance.[1] The third party defendant is an independent stevedoring contractor and was the plaintiffs' employer at the time of the accident. At trial, after all the evidence was heard, the court directed a verdict for the plaintiffs, holding that the vessel was unseaworthy as a matter of law and that

---

1. Both the defendants and third party defendants, for the sake of convenience and clarity, will be referred to in the singular as the ship and the stevedore respectively.

there was no evidence of contributory negligence. The jury assessed damages and in the third party indemnity action held for the ship. Both the defendant and the third party defendant appeal.[2]

Shortly after 8 a. m. on August 23, 1966, a crew of longshoremen in the employ of the stevedore commenced the assigned task of receiving cargo in the 'tween deck of hold # 5. The cargo, being shifted from another hold on the Brasilia, was to be stowed in a refrigerator compartment. The stowing crew, under the supervision of one of the stevedore's foremen, initially tried to move the 350–400 pound cardboard containers manually. At the suggestion of one of the ship's officers a forklift was brought on board and placed in the hold. Three of the plaintiffs, Pablo Cantres Roman, Jose Virella Rivera, and Antonio Falu Benitez were among the holdmen in the crew. Plaintiff Jose A. Valdivia drove the gasoline-powered forklift, which was the only type the stevedore owned. The evidence on specific times is not precise nor uncontradicted, but it appears that the forklift began operating in the compartment between 9 and 9:30 a. m.

When the machine started its operations the compartment's ventilation system was not in operation. Control over the ventilation blowers rested exclusively with the ship's officers. After approximately one hour, the compartment became hot and the men in the hold complained to the foreman of nausea and dizziness. Acting on these complaints, the foreman went "upstairs" and informed the ship's first officer of the situation and requested that the fans be turned on. The officer replied that he would switch on the ventilation system and that the men should continue working. The foreman returned to the hold, told the crew that ventilation was forthcoming, and ordered a resumption of work. Shortly thereafter some indication of increased ventilation was noticed.

The men resumed work, and although the forklift continued to emit smoke there is evidence that the fumes were less noticeable in the cooler air. However, within approximately one hour, several of the plaintiffs were overcome by carbon monoxide. Valdivia collapsed and Falu Benitez lost consciousness. The foreman pulled several persons from the compartment and ordered the rest to stop work and quit the hold. Subsequent medical diagnoses revealed that each of the plaintiffs suffered some degree of carbon monoxide asphyxiation.

■■■ The court found the vessel unseaworthy as a matter of law, a finding which met no objection. A major contention on appeal, however, is that the court erred in refusing to submit the issue of plaintiffs' contributory negligence to the jury. It is settled beyond dispute that a vessel owes an obligation of seaworthiness to longshoremen injured aboard ship, Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), that the contributory negligence of such person does *not* bar his action but only mitigates damages, Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), and that the doctrine of assumption of risk is incongruous and inapplicable to such maritime claims, Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939).

■■■ The district court kept the issue from the jury on the ground that no evidence had been adduced to support a finding of contributory negligence. In reviewing this ruling we must view the evidence in a light most favorable to the objecting parties. Viewed in such a light, the evidence establishes that the plaintiffs, feeling dizzy and nauseous, complained to the foreman[3] and were

---

2. Although the defendant was not held ultimately liable, the plaintiffs' attorneys' fees were assessed against it. Also, during trial the defendant and the third party defendant stipulated to equally apportion

any adverse jury verdict plus assessed costs.

3. Of the six witnesses who were in the hold, five testified unequivocally that com-

subsequently informed that the fans would be turned on. They were ordered to keep working in the hold, and work continued until several of them were overcome by carbon monoxide.[4] The defendant's theory is that the plaintiffs' continued presence in the hold was contributorily negligent, as they knowingly exposed themselves to dangerous conditions. Defendant relies, *inter alia,* on Mroz v. Dravo Corp., 429 F.2d 1156 (3d Cir. 1970) and DuBose v. Matson Navigation Co., 403 F.2d 875 (9th Cir. 1968). An analysis of these cases, however, demonstrates why defendant's theory does not hold water. In *Mroz* the plaintiff, a ship's cook, was exposed for three years to noxious fumes which had previously made her ill. These facts raised a jury question of contributory negligence because she knew the conditions were dangerous and "she did not complain of those conditions or ask to be transferred to other work."[5] Similarly, in *DuBose* a seaman's leg was exposed to a continual bumping action, and plaintiff was "negligent in not setting in motion circumstances which would bring about a change of conditions, namely, informing his superiors of the bumps he had been receiving so that they could change the course of the dish-runners."[6] In the instant case, however, the plaintiffs *did* complain of the condition, were told the problem would be remedied, and were ordered to continue working. They were not in control of the stowing operations in the hold and cannot be held responsible for the overall manner

of stowing. Ballwanz v. Isthmian Lines, 319 F.2d 457 (4th Cir. 1963), cert. denied, 376 U.S. 970, 84 S.Ct. 1136, 12 L. Ed.2d 84 (1964). To say the plaintiffs were contributorily negligent in these circumstances would be to state that in continuing work they assumed the risk of obeying orders. We will not allow assumption of risk to masquerade as contributory negligence.[7]

■ Although a seaman or longshoreman does not assume the risk of obeying an order, it is sometimes said that unwarranted obedience to an absurd or obviously dangerous order may be negligence. *See* Klimaszewski v. Pacific-Atlantic S. S. Co., 246 F.2d 875 (3rd Cir. 1957); Darlington v. National Bulk Carriers, 157 F.2d 817 (2d Cir. 1946). The fumes were clearly annoying to the plaintiffs, but the record is barren of any evidence that they knew, for example by prior experience, that the order to continue working posed obvious dangers. *Cf.* Mroz v. Dravo Corp., *supra;* Haddock v. North Atlantic & Gulf S. S. Co., 81 F.Supp. 421 (D.Md.1948). Carbon monoxide is colorless and odorless, even if the smoke was not, and the plaintiffs had a right to believe the compartment was being properly ventilated. The danger of the situation cannot be said to have been obvious.

■ In examining the contention that the damages awarded were excessive, we must view the evidence most favorably to the injured plaintiffs, for we are most reluctant to overturn a jury

---

plaints were made to the foreman, and it is undisputed that the foreman asked the ship's officer to turn on the blowers. The defendant relies on the testimony of the sixth witness, plaintiff Virella Rivera, that no complaints were made, in arguing that a question of fact was created. Although the credibility of a witness and the weighing of contradictory evidence is generally for the jury, in the context of this record we cannot say that this statement, made by one obviously confused about the events and admittedly suffering from memory loss, amounted to more than a mere scintilla of evidence.

4. Whether work was suspended after the complaints and whether the blowers were in fact turned on are not relevant, on the facts of this case, to the question of contributory negligence.

5. 429 F.2d at 1164.

6. 403 F.2d 878.

7. To the extent that B. A. Carroll Stevedore Co. v. Makinda, 20 F.2d 19 (1st Cir. 1927) is at odds with this conclusion, it is no longer good law.

verdict, especially where the sums include unspecified compensation for pain and suffering.[8] We will disturb a jury award only where the sum is "so excessive that the district court's refusal to order a new trial constitutes a manifest abuse of discretion." Ganapolsky v. Park Gardens Development Co., 439 F.2d 844, 846 (1st Cir. 1971). Cantres Roman ($76,350) incurred permanent brain damage and has experienced several epileptic seizures as a result of the accident. Valdivia ($73,250) suffered permanent brain damage, which has impaired his vision and memory. He has also developed a severe psychological reaction. Virella Rivera ($18,000, reduced with consent from $23,000) has continual headaches and permanent visual impairment, but did return to work four months after the accident. None of these awards is so unreasonable as to require a redetermination of damages. The same, however, cannot be said of the award to Falu Benitez ($15,000, reduced with consent from $21,500). Falu Benitez was unconscious for two hours after the accident, and for a period of one to two months thereafter suffered from intermittent headaches, for which he was given pills. After his discharge from outpatient treatment, approximately six weeks after the accident,[9] he returned to work and has felt well ever since. His precise earnings loss does not appear on the record, but likely did not exceed five percent of the judgment. On the basis of these facts, the $15,000 award was far in excess of reasonable compensation for pecuniary losses and a brief period of rather minor pain and suffering, and the amount must be redetermined in a new trial limited to this issue.

The defendant objects to the imposition of attorney's fees pursuant to Puerto Rican Rules of Civil Procedure 44.4(d).[10] To impose attorney's fees the court must find that a party was obstinate, that he was stubbornly litigious, prolonging the duration of the suit or causing the plaintiff unnecessary inconvenience and expenses. Soto v. Lugo, 76 P.R.R. 416, 419 (1954). Although in most cases attorney's fees are assessed only against a losing party, the defendant acknowledges that ultimate outcome is not itself determinative of who should pay attorney's fees. There was no substantial doubt that the vessel was unseaworthy, and defendant was unable even to reach the jury on contributory negligence. Notwithstanding these facts, defendant neither stipulated to unseaworthiness nor made any offers of settlement.[11] Such conduct supports a finding of obstinacy. That the defendant ultimately prevailed against the third party defendant does not mitigate the nature of its behavior.

The trial court also awarded interest on the judgments from the dates on which the complaints were filed,[12] relying on Puerto Rican Rules of

---

8. However, although pain and suffering are difficult to quantify, their presence does not immunize a jury verdict. See Compania Transatlantica Espanola, S. A. v. Melendez Torres, 358 F.2d 209 (1st Cir. 1966).

9. The length of treatment and unemployment time is unclear in the record. Falu Benitez stated two different periods, 24 and 48 days.

10. "Attorney's fees. Where a party has been obstinate, the court shall in its judgment impose on such person the payment of a sum for attorney's fees."

11. A settlement with the plaintiffs would not have precluded a subsequent suit for indemnity against the stevedoring contractor, see, e. g., Tankrederiet Gefion A/S v. Hyman-Michaels Co., 406 F.2d 1039 (6th Cir. 1969); N. M. Paterson & Sons, Ltd. v. Nicholson Cleveland Terminal Co., 323 F.Supp. 913 (N.D.Ohio, 1971), and the trial court found that defendant's attorneys were aware of this.

12. Plaintiffs Virella Rivera, Cantres Roman, and Falu Benitez joined as plaintiffs in a complaint initially filed April 5, 1968. Valdivia's complaint was filed July 22, 1968.

Civil Procedure 44.4(e).[13] This reliance was in error, for the cause of action arose prior to the Rule's effective date. The traditional common law rule does not allow prejudgment interest on unliquidated tort claims. *See* Moore-McCormack Lines v. Amirault, 202 F.2d 893 (1st Cir. 1953) (discusses the rule but reserves judgment on it). However, we agree with the reasoning of the Second Circuit that even in the absence of a rule or statute, a plaintiff's immediate loss and the usual delay in payment may warrant the granting of prejudgment interest. Petition of City of New York, 332 F.2d 1006, 1008 (2d Cir.), cert. denied, City of New York v. Bernstein, 379 U.S. 922, 85 S.Ct. 277, 13 L.Ed.2d 335 (1964). This is notably true where a party has been determined to have been obstinate in its handling of the case. Although the Puerto Rican Rule was not applicable here, the reason behind the rule justifies the action taken by the district court.

The third party defendant raises several contentions on appeal, but in view of the stipulation with defendant to share damages (see note 2, *supra*), the stevedore concedes its objections are mooted by denial of a new trial of the primary action. We merely state, therefore, with respect to its allegation of error in the jury instructions, that the court appears to have overlooked the requirement of Rule 51, Fed.R.Civ.P., that parties state their objections following the charge rather than before. *See* Bouley v. Continental Casualty Co., 454 F.2d 85 (1st Cir. 1972); Dunn v. St. Louis-San Francisco Ry. Co., 370 F.2d 681 (10th Cir. 1966).

13. "(e) [Legal interest.] In all cases of money collection where the party has been obstinate the court shall impose on such person the payment of interest according to law, from the time in which there appeared cause of action and in case of damages, such payment of interest shall be imposed from the time the filing of the claim was made and computed on the amount of the judgment, except in the case where the defendant be the Commonwealth of Puerto Rico, its agencies, public corporations or the municipalities of Puerto Rico; *Provided, That the provisions of this subsection shall only apply to causes of action that may arise subsequently to the date of its approval.* [*May 26, 1967*]." (Emphasis added.)

*The judgment of the district court is affirmed with the exception of the award to Falu Benitez, which is vacated and the case is remanded for a new trial on that issue alone.*