**Edna M. KNOBEL, Administratrix of the Estate of Karl G. Knobel, Deceased, Plaintiff,**

v.

**PENNSYLVANIA RAILROAD COMPANY, a corporation, Defendant.**
**Civ. A. No. 16925.**

United States District Court
W. D. Pennsylvania.
March 27, 1961.

Louis C. Glasso, Pittsburgh, Pa., for plaintiff.

Donald A. Brinkworth, Pennsylvania Railroad Legal Dept., Pittsburgh, Pa., for defendant.

MARSH, District Judge.

Plaintiff administratrix brought this action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages arising out of the death of her husband, Karl G. Knobel, during the course of his employment by the defendant company. The jury returned a verdict on December 8, 1960, in favor of the plaintiff in the sum of $55,000, and defendant filed a "Motion for Judgment N.O.V. or New Trial".[1]

The defendant offers various grounds in support of its alternative motions; however, the only ones which in our opinion require comment may be summarized as follows:

(1) The evidence is insufficient to support a finding that the defendant was negligent and that this negligence contributed to decedent's death.

(2) The verdict is excessive.

The pertinent facts as developed at the trial may be briefly summarized as follows:

The plaintiff, Edna Mae Knobel, is the widow of Karl G. Knobel, deceased, and the administratrix of his estate. The Knobels had four children whose ages at the time of decedent's death on May 10, 1955, were 12, 7, 4, and 3.

Karl Knobel was employed by the defendant company in 1941, and, except for the time that he spent in the armed services between 1943 and 1945 and as hereinafter set forth, continued in his employment with the defendant company in various clerical capacities until his death in 1955.

On December 13, 1953, Mr. Knobel was found unconscious at the bottom of the stairs in his home. He was observed by his wife to be twitching and frothing at the mouth, and his mind was blank for about 10 minutes. He did not report to work until the second day after this incident at which time he was given a physical examination on behalf of the defendant company and found not qualified for employment. Later in the month of December, 1953, Mr. Knobel was examined by a Dr. Finkelhor on behalf of the Railroad. Dr. Finkelhor made a tentative diagnosis of idiopathic epilepsy and recommended that Knobel be given Dilantin and be kept under observation for 6–9 months and if no further seizures were suffered, all well and good.

In August of 1954 decedent was again examined on behalf of the defendant company. At this time his vision was found to be so defective that he could not distinguish certain objects, such as pens and pencils, across the distance of an ordinary desk, and his disqualification for employment was continued.

In December, 1954, Karl Knobel was once again examined for the defendant

---

1. The Motion for Judgment N.O.V. not having been filed within ten days of the verdict, it is doubted that the court has power to consider it. Rule 50(b), Fed.R.Civ.P. 28 U.S.C.

company. Although his vision had improved somewhat since the August examination, it was still extremely poor—uncorrected for each eye 20/200; corrected with glasses his right eye was 20/70 and his left eye 20/200. At this time an ophthalmologist diagnosed decedent's condition as optic nerve atrophy and recommended that he be re-employed but that his duties be confined to those requiring limited visual activity.

The defendant's medical examiner qualified Knobel for restricted duty commencing January 3, 1955—the restrictions were that Knobel was to stay away from moving equipment and stairways and was to be assigned to positions requiring minimal visual effort. Decedent was assigned to work as a messenger delivering mail and packages between certain floors of the Railroad terminal and office building in Pittsburgh, Pennsylvania.

At approximately 10:45 a. m. on May 9, 1955, Karl Knobel was found lying on the marble tile floor of the Pennsylvania Railroad office building in front of the elevators on the fifth floor. There were two packages of mail lying close to him and his glasses were found approximately 30 feet away. He was in a convulsive state lying on his back. Knobel was taken to a hospital where he died the next day from injuries he received when he fell and struck his head on the marble tile floor.

There was evidence that packages of mail were occasionally left lying on the floor in the hallways of the office building.

■ From the foregoing, we think the jury could have found with reason that the defendant company was negligent in certifying Karl G. Knobel back to work and assigning him duties that required him to traverse hard-surfaced floors, which occasionally presented tripping hazards to one with the serious vision defects Knobel had and of which the defendant was aware. Robak v. Pennsylvania R. Co., 3 Cir., 1949, 178 F.2d 485. Likewise, we think the jury could have found with reason that the packages were left lying on the floor near the elevator, that Knobel tripped over them because of his poor eyesight, and that the defendant's negligence played some part in causing his death. Rogers v. Missouri Pacific R. Co., 1957, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493; Schulz v. Pennsylvania R. Co., 1956, 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 668

■ We are also of the opinion that the evidence was sufficient to justify the amount of the jury's award. Decedent was 37 years old when he died, and although there was some evidence that he was suffering from epilepsy, the jury was not bound to find that he was and could have found that his only physical impairment was his defective vision. Accordingly, although the court instructed the jury that the mortality tables admitted into evidence were only to be used as a guide in determining how long Knobel would have lived but for the accident, the jury could have found that his life expectancy was 38 years as indicated by the tables. The evidence indicated that he earned $69.20 for a 40-hour week during the period between January 3, 1955 and May 9, 1955. This would amount to approximately $3,600 per year, which amount the jury could have determined was the decedent's annual earning power despite his visual handicap. Based on that earning capacity, we cannot say that the verdict of $55,000 (of which $608.20 was for hospital and funeral expenses) representing the present worth of the pecuniary loss—including the pecuniary value of loss of services, care, guidance, etc.—to the widow and children of the decedent, is judicially shocking.

■ It is the opinion of the court that both motions should be denied; for, while we would not have arrived at the same conclusions as did the jury, there was sufficient evidence to support its findings and to prevent us from invading its function. See: Rogers v. Missouri Pacific R. Co. and Schulz v. Pennsylvania R. Co., cited supra; Tennant v. Peoria & P. U. Ry. Co., 1944, 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520.