**Edna MROZ, Plaintiff,**

v.

**DRAVO CORPORATION, Defendant.**

**Edna MROZ, Libellant,**

v.

**DRAVO CORPORATION, Respondent.**

**Civ. A. No. 65–716; No. 65–43.**

United States District Court
W. D. Pennsylvania.

Nov. 15, 1968.

Hymen Schlesinger, Pittsburgh, Pa., for plaintiff-libellant.

Bruce R. Martin, Pittsburgh, Pa., for defendant-respondent.

## OPINION AND ORDER

MARSH, District Judge.

Edna Mroz, the plaintiff, filed a complaint at Civil Action No. 65–716, setting forth three counts for damages under the Jones Act and maritime law. At No. 65–43 in Admiralty, she filed a libel and complaint for maintenance and cure for the illness and injuries set forth in the three counts at the civil action. At a hearing in the admiralty action held on May 31, 1966, by an associate Judge, on motion of the defendant, and over the objection of the plaintiff, the civil action and admiralty action were consolidated for trial.[1]

With respect to the third count of the complaint, it was determined by court and counsel that a preliminary trial was required to determine whether the plaintiff-seaman on May 26, 1965, was a member of the crew of the Motor Vessel Freedom [2] and whether that motor vessel was in navigation on that date.[3]

### Preliminary Trial

At the preliminary trial the plaintiff, who had been employed by defendant for

1. See transcript of proceedings at No. 65–43 in Admiralty filed June 7, 1966. A petition for mandamus and prohibition was denied by the Court of Appeals.

2. The effect of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., covers all maritime workers except masters or "member of a crew of any vessel". The effect of this Act is to restrict the benefits of the Jones Act to members of a crew of a vessel. Swanson v. Marra Brothers, Inc., 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946).

3. Tr., pretrial conference, August 16, 1967, pp. 3, 5, 11; order of court dated August 16, 1967.

many years, contended that on May 26, 1965, the defendant's motor vessel Freedom was a vessel in navigation and that plaintiff was a member of its crew. It appeared that the Freedom was tied to defendant's landing dock in the Ohio River because of a strike by the masters, mates, pilots and engineers, or their respective Unions. This strike started on March 31, 1965, and ended in the middle of June, 1965. In May, the defendant called back to work certain seamen, including the plaintiff, members of the National Maritime Union, who were not on strike. Certain seamen were painting the kitchen of the Freedom; they ate their meals on board and some slept on board. The plaintiff cooked and performed maid service; she worked for 17 days (T., p. 17). On May 26, 1965, she was hurt on board in an accident for which she claims damages in the third count of the complaint and for maintenance and cure in the admiralty action.

■ At the conclusion of the plaintiff's evidence, the defendant moved for a directed verdict which was denied. As in cases where the facts pertaining to negligence or contributory negligence are undisputed, it was our opinion that the evidence in this trial was susceptible of inconsistent inferences. Therefore, the case was submitted to the jury. The jury found that on May 26, 1965, the Freedom was a vessel in navigation and that the plaintiff was a member of its crew. We think the findings were justified; the defendant thinks otherwise.

■ The defendant timely filed a motion for judgment n.o.v. which was denied. As we view the problem, it is only in a very clear case in which the evidence is such that there is no room for fair and reasonable men to reach different conclusions on the issues presented,

that the court takes questions of fact from the jury. This was not such a case. It appears that each case of this type has been decided on its own peculiar facts, and ordinarily no one feature pertaining to the status of the vessel is determinative. The evidence pertaining to whether the defendant's vessel was in navigation and whether the plaintiff-seaman was a member of its crew contained factual elements such as to make them ones for the jury to consider under appropriate instructions as to the various relevant factors under the law. No objections were made to the instructions by either party.

■ Where, as here, the evidence is susceptible of inconsistent inferences, jury questions are presented.[4] It was the function of the jury to resolve the inconsistencies, which was done. In our opinion, the plaintiff was entitled to a trial on the merits on the third count of the complaint and for maintenance and cure, for she has been totally incapacitated since the accident of May 26, 1965.

*The Trial*

At the trial on the merits, plaintiff proved that she had developed emphysema while employed by defendant long prior to July 6, 1962. Her claim on the first count was limited to damages for aggravation of this disease caused within the three years prior to filing her complaint on July 6, 1965 (T., p. 6; charge, T., pp. 358–360). Her damages for diminution of earning power were limited to the period following her injuries sustained in a fall on May 26, 1965, involved in the third count, from which injuries she had not recovered at time of trial (charge, T., p. 381). The jury was instructed that she was not entitled to maintenance and cure prior to May 26, 1965 [5] (charge, T., p. 387).

---

4. Cf. Butler v. Whiteman, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754 (1958); Offshore Company v. Robison, 266 F.2d 769, 777–780, 75 A.L.R.2d 1296 (5th Cir. 1959); 1 Norris, The Law of Seamen, §§ 8–12 (2d ed. 1962); 2 Norris, op. cit., §§ 659–660, 664–665.

5. Plaintiff did not request maintenance and cure from defendant on account of her emphysema prior to May 26, 1965. She worked voluntarily after she was told that she had emphysema in 1962. Economic reasons may have required her to work (T., pp. 38, 63), but the prin-

The jury returned verdicts in favor of the plaintiff in the amount of $18,000 [6] in the civil action and $7,200 in the admiralty action. On March 1, 1968, judgments were entered in favor of plaintiff and against the defendant in those amounts together with costs.

At the trial, after argument (T., pp. 226–237), the defendant's motion for a directed verdict on the second count of the complaint, which alleged an accident occurring in March, 1961, was granted (T., p. 237).

On March 11, 1968, the plaintiff timely filed and served a motion for a new trial. On the same day, the defendant timely filed a motion for judgment in accordance with the motion for directed verdict on the remaining counts (counts 1 and 3) in Civil Action No. 65–716. In our opinion these motions should be denied.

The defendant also filed a separate motion for a new trial in Admiralty No. 65–43, and a separate motion for a new trial as to the remaining counts in Civil Action No. 65–716. The plaintiff moved to strike the defendant's post-trial motions because untimely served. We think plaintiff's motion to strike the defendant's motions for new trials should be granted. Rule 59(b), Fed.R.Civ.P.

*Defendant's Motion for Judgment N.O.V. on Counts 1 and 3.*

At the conclusion of plaintiff's evidence at the trial on the merits, the defendant moved for a directed verdict on all counts. The court granted the motion as to Count 2. The defendant rested without calling any witnesses. The defendant moved for judgment n.o.v. on the remaining counts.

In determining whether this motion should be granted, the court is bound to accept the evidence and all rea-

sonable inferences therefrom in the light most favorable to the plaintiff, Tennant v. Peoria & P. U. R. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520 (1944), and draw all reasonable inferences against the defendant, Makowsky v. Povlick, 262 F.2d 13 (3d Cir.1959). In our opinion, the evidence justified the verdict in favor of the plaintiff in the civil action.

At the trial it appeared that Mrs. Mroz, a long-time maid and cook in the employ of the defendant aboard its river towboats, developed emphysema prior to 1962. Suffering from shortness of breath, dyspnea, and weakness, orthopnea and paroxysmal coughing, and pain in the mid and low back. On February 13, 1962, she was admitted to the United States Public Health Hospital in Baltimore, where she was treated for pulmonary emphysema. Improved, she was discharged on March 8, 1962 as fit for duty, with a discharge diagnosis, inter alia, of pulmonary emphysema. Plaintiff gave the fit for duty slip to Dr. Marshall, the defendant's medical examiner in charge of its medical department, who examined her (T., pp. 47–48). Notwithstanding his knowledge of her emphysema, he certified plaintiff back to work as a cook and maid on board defendant's diesel motor vessels. In these capacities, she continued to work on these vessels until the spring of 1965. Throughout this period she was on medication and for portions thereof was an out-patient of the United States Public Health Service in Pittsburgh.

The jury could have found that it was negligence on the part of the defendant's medical examiner to permit her to work on defendant's diesel motor vessels where she was continually forced to breathe noxious fumes and smoke which permeated those boats at times during the night and day (T., pp. 23, 49,

---

ciple pronounced in Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), and Yates v. Dann, 223 F.2d 64, 67 (3d Cir. 1955), was not invoked by plaintiff to recover maintenance prior to May 26, 1965 while she was working and receiving full wages.

6. From May 26, 1965, when plaintiff was injured on board the Freedom to the date, of trial, she lost wages in excess of $18,000.

51–52, 135–136, 141–145, 160–161, 170, 176–179, 202). The vessels, including the bedrooms of the cook and maid were frequently filled with diesel fumes and smoke, and on some of the boats leaks had developed in the exhaust pipes which increased the fumes and smoke inside (T., pp. 176–179, 202). In addition, it was undisputed that the captains and the crew of the diesel vessels knew of plaintiff's emphysema and were aware that she was frequently short of breath and in a weakened condition (T., pp. 48–49, 182, 200); that at times she could not do her work and her fellow seamen had to help her do the work (T., pp. 49, 180–181, 201). The jury could have found that it was negligence on the part of the captains to permit her to work on their vessels in her emphysematous and weakened condition. Unquestionably, a master has paternal responsibilities to the members of his crew. The defendant, through its captains and doctor, occupies a position of guardianship to seamen as the wards of the admiralty. Spellman v. American Barge Line Co., 176 F.2d 716, 719 (3d Cir. 1949).

From the evidence the jury could reasonably have found that the irritating gases to which she was regularly exposed from March, 1962, to the spring of 1965, and the occasional damp and cold weather in the boats, aggravated her condition. There was undisputed medical testimony that the fumes and smoke had a continuous traumatic effect on plaintiff's diseased lungs (T., pp. 135–136, 141, 145); that they were dangerous to her health (T., p. 145); that they aggravated her emphysematous condition (T., pp. 23, 135–136); and that the disease could have been arrested if she had not been so exposed (T., p. 168). The jury could have concluded

that defendant had assigned her duties which were beyond her capacity, and that this in conjunction with regular inhalation of smoke and fumes not only aggravated the emphysema but hastened the onset of total disability. It could have found that plaintiff was permanently disabled by her emphysema in November of 1965 (T., pp. 93–95, 123–124).

The fact that the Public Health Hospital in March, 1962, gave plaintiff a fit for duty slip is not conclusive of her fitness to work aboard ships permeated with noxious gases. It was only one factor to be considered by the jury on the issue of negligence. Where there is evidence that the ailing plaintiff was in fact not fit for duty aboard diesels, the defendant is liable for the consequences despite the fit for duty slip.[7] Also, the plaintiff's efforts to work while suffering from emphysema would not exonerate defendant from liability for its negligence in permitting her to work on diesel vessels where she could not escape the noxious fumes and smoke.[8] Aware of her affliction since March, 1962, defendant had the ancient obligation to properly care for the plaintiff-seaman. Cortes v. Baltimore Insular Line, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932); Spellman v. American Barge Line Co., supra. It had a duty not to subject her on its boats to the hazards of exposure to cold and damp weather and to noxious gases which irritated her damaged lungs. The evidence supports a finding of negligent failure to provide proper care and defendant is liable for the consequential damages. These damages, i.e., pain and suffering and diminution of earning power, merge into the damages sustained in the accident of May 26, 1965, complained of in the third count.

**7.** Cf. Gooden v. Sinclair Refining Company, 378 F.2d 576, 579 (3d Cir. 1967), and the cases cited therein.

**8.** Cf. Knobel v. Pennsylvania Railroad Company, 192 F.Supp. 771 (W.D.Pa. 1961), aff'd 296 F.2d 737 (3d Cir. 1962); Dunn v. Conemaugh & Black Lick Railroad, 267 F.2d 571 (3d Cir. 1959); Nuttall v. Reading Company, 235 F.2d 546 (3d Cir. 1956); Robak v. Pennsylvania R. Co., 178 F.2d 485, 487 (3d Cir. 1949); Spellman v. American Barge Line Co., 176 F.2d 716 (3d Cir. 1949); Wolf v. Hatboro Construction Co., 235 F.Supp. 725 (E.D.Pa.1964).

On May 26, 1965, the plaintiff in the course of her employment by the defendant was caused to trip and fall by a rag negligently left lying on the floor of the kitchen of the defendant's motor vessel Freedom by seamen who had been painting. This rag also presented an unseaworthy condition. From this fall, plaintiff sustained sprains in her neck, shoulder and lower back and an injury to her knee. At the time of trial, the jury could have found that she was permanently and totally disabled (T., pp. 62–69, 93–95, 123–124).

Following this accident she was treated at the Mercy Hospital and discharged with a recommendation that she continue physiotherapy. Defendant failed to provide this.

After her discharge from the hospital, she was examined by Dr. Bernard J. Johnston on July 22, 1965, and received five or six treatments from him, the last one being on December 5, 1965. Dr. Johnston diagnosed her condition as injury to the neck, lumbar spine, sprain-type with instability, muscular distrophic reaction in the right shoulder and chronic emphysema. He found kyphosis, thoracic scoliosis, and instability of the lumbosacral joint or lower lumbar vertebrae, and lumbar lordosis (T., pp. 76–79). She did not improve from the treatment. Dr. Johnston prescribed a corset and collar which plaintiff wears when able (T., p. 82). In November, 1965, she procured from Dr. Johnston a certificate (Ex. 1) to return to work on a trial basis (T., p. 93); however, she did not return to work (T., p. 86). The certificate stated that she could work "within the specific limitations of her permanent disability as previously noted on examination. Limited to light duty." The permanent disability referred to was the emphysema (T., p. 95).

She was hospitalized in the United States Public Health Hospital at Baltimore from June 7, 1966 to June 24, 1966, where the diagnosis was chronic low back strain, chronic cervical strain, chronic emphysema, and possible early cirrhosis. She was discharged as "not fit for duty".

On December 9, 1967, she was admitted to the Homestead Hospital because of a severe status asthmaticus. The diagnosis was status asthmaticus with pulmonary emphysema. She was discharged on December 30, 1967. At this hospital she was attended by Dr. S. T. Ilyas and Dr. J. J. Lebovitz.

At the trial it was obvious that she was short of breath, and she testified she could not work. The jury could have found from the evidence that emphysema and the chronic sprains in her neck, shoulder, and lower back rendered her totally and permanently disabled from May 26, 1965 to time of trial, with a truncated life expectancy. (T., pp. 62–69, 93–95, 123–124.)

*Plaintiff's Motion for a New Trial*

The plaintiff assigns 9 reasons for a new trial. Reasons 5 and 6 contend that the court erred on the issue of contributory negligence. The plaintiff excepted to the instructions of contributory negligence at the conclusion of the charge (T., pp. 398, 400). Although the defendant presented no testimony, there was evidence that when plaintiff tripped and fell, the offending rag was in plain sight on the floor of the lighted kitchen. We think from these circumstances there was an issue of contributory negligence and the instructions were proper. Cf. Gans v. Baltimore & Ohio Railroad Company, 319 F.2d 802 (3d Cir. 1963).

The plaintiff's testimony emphasized that during the period from 1962 to the spring of 1965 she suffered acutely on board the defendant's diesel vessels from diesel fumes and smoke (T., pp. 51–52, 199). She testified that when it was hot, her bedroom filled up with smoke, and when it was windy, fumes permeated the kitchen. She claimed these fumes burned her throat and chest; that they made it hard for her to breathe and she felt clogged and stuffed up; that she coughed a lot more than usual; and that they made her emphysema worse. She testified that on board the diesels she

breathed in smoke and fumes daily (T., pp. 51–52). From the testimony of plaintiff, Amelda Perry and Earl Fowler, the jury could have found that in her emphysematous condition, the assigned work was beyond her physical capacity (T., pp. 180–181, 199). There may have been an economic problem, but notwithstanding the alarming symptoms and obnoxious conditions and her incapacity, there is no evidence that she complained to Dr. Marshall, to the captains, or that she requested defendant to transfer her to work ashore. In our opinion, from these circumstances also, there was an issue of contributory negligence for the jury to consider.

No other objections to the charge were made by plaintiff; thus, reasons 3, 4, 7, 8 and 9 are without merit.[9] Rule 51, Fed.R.Civ.P.; Dunn v. St. Louis-San Francisco Railway Company, 370 F.2d 681 (10th Cir. 1967); Trent v. Atlantic City Electric Co., 334 F.2d 847, at fn. 4 (3d Cir. 1964).

Plaintiff's reason 2 assigns error in granting a directed verdict on the second count. That count asserts a claim under the Jones Act, De Zon v. Amer. President Lines, 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1065 (1943), and the general maritime law for personal injuries sustained by plaintiff in March, 1961. The Jones Act claim is based solely upon the contention that "notwithstanding defendant's knowledge and notice of her injuries, it breached its obligation to care for plaintiff resulting in aggravation and prlongation [sic] of her injuries and disabilities", whereas the unseaworthiness claim has reference to the original accident and injuries which occurred in March, 1961.

■ There was no evidence that during the three-year period from July 6, 1962 to July 6, 1965, when the complaint was filed, or at any other time, that defendant breached its obligation to provide maintenance and cure for injuries sustained in March, 1961, or if it did, that such breach resulted in aggravation or prolongation of those injuries. For this reason, the directed verdict was proper as to the Jones Act claim, as well as to the maritime claim in that respect.

■ To plaintiff's claim under the maritime law for the unseaworthiness of the mop-bucket which caused her to fall in March, 1961, the defendant pleaded laches (see Answer to admiralty action; Tr., pretrial conference, August 16, 1967, pp. 6–8, 10–11). On September 11, 1967, plaintiff filed an amendment alleging an excuse for the delay in late filing of her complaint and alleging that no prejudice resulted to the defendant by the delay. The evidence produced in support of this amendment did not reveal any exceptional circumstances which in equity would excuse her delay in not instituting suit within the three-year period provided by the Jones Act.[10] She testified that she knew of her right to sue the defendant if she wanted to make a claim for injuries (T., p. 106). It appears that she worked during the four years following the accident with some pain and for the latter three years handicapped by emphysema, but her wage loss, if any, caused by the 1961 accident was de minimis (T., p. 46). The only substantial damages she proved from this accident were for pain and suffering. She reported her fall and injuries to defendant, and its physician, Dr. Marshall, found nothing wrong with her. Thus, the delay is inexcusable and gives rise to the presumption of prejudice to the defendant.[11] There was no evidence that the allegedly defective

9. It seems that the instruction objected to in reason 7, with respect to normal hazards, is warranted. See: Rush v. Cargo Ships & Tankers, Inc., 360 F.2d 766 (2d Cir. 1966); Klimaszewski v. Pacific-Atlantic Steamship Co., 246 F.2d 875, 877 (3d Cir. 1957); Roberts v. United Fisheries Vessels Co., 141 F.2d 288, 292–293 (1st Cir. 1944); Olsen v.

The Patricia Ann, 152 F.Supp. 315, 318 (E.D.N.Y.1957).

10. Cf. McAllister v. Magnolia Petro. Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958).

11. Cf. Redman v. United Fruit Co., 185 F.2d 553 (2d Cir. 1950); Redman v. United States, 176 F.2d 713 (2d Cir.

mop-bucket was in existence. Plaintiff cites Larios v. Victory Carriers, Inc., 316 F.2d 63 (2d Cir. 1963), for the proposition that it was the duty of defendant to come forward with evidence to show it was prejudiced, but in that case the court also said at page 67:

"* * * [T]here may be cases where the plaintiff's evidence as to excuse for the delay is so insubstantial that the court need not call on the defendant to come forward with evidence of prejudice."

We think this is such a case. If plaintiff is correct that the issue of laches was for the jury, we think that there was no substantial evidence of excusable delay to submit to that body.

None of the assigned reasons warrant a new trial.

*Defendant's Motions for a New Trial*

As heretofore stated, plaintiff filed a motion to strike defendant's post-trial motions because untimely served. The record fails to disclose when the defendant's separate motions for a new trial were served upon the plaintiff. They were filed on March 11, 1968. Counsel for plaintiff asserts in his brief that the defendant's motions were received at his office on March 14, 1968,—13 days after the judgments were entered on the verdicts. He attached a photocopy of an envelope postmarked March 13, 1968, and bearing defendant's counsel's name and office return address, and asserts that it contained the motions. Service by mail is complete upon mailing. Rule 5(b), Fed.R.Civ.P. Counsel for the defendant asserts in his brief that he "has no clear present recollection of the events of March 11, 1968. * * * [His] impression was that he dropped the copies off at plaintiff's counsel's office * * *, but counsel could be mistaken on this." It would have been more appropriate if affidavits had been filed in support of and in opposition to plaintiff's motion to

strike. Rule 59(b), Fed.R.Civ.P., provides:

"A motion for a new trial shall be served not later than 10 days after the entry of the judgment."

This time limitation cannot be extended. Rule 6(b), Fed.R.Civ.P.

 In our opinion, the burden is upon the defendant to establish *on the record* that its motions for a new trial were timely served. Since it failed to do so by certificate endorsed upon the motions, or by affidavit, or by other proof, the motions for new trial must be stricken.

In the event that this decision is in error, we think there is no merit in any of the reasons for which the defendant claims it is entitled to a new trial in the civil action and in the admiralty action.

Defendant assigns 6 reasons in support of its motion in the civil action and 11 reasons in the admiralty action.

 The defendant's only objections to the charge which merit discussion were cured by supplemental instructions (T., pp. 396–398) to which the defendant did not object. The objections assigning error in refusing to charge as requested in defendant's points for charge submitted prior to the arguments cannot be considered. Rule 51, Fed.R.Civ.P.; Dunn v. St. Louis-San Francisco Railway Company, supra; Trent v. Atlantic City Electric Co., supra, at f.n. 4.

The verdicts in both actions were not excessive. There was evidence in the admiralty action for maintenance and cure with respect to plaintiff's injuries sustained on May 26, 1965, that defendant failed to provide plaintiff with physiotherapy recommended by Dr. Dillon upon her discharge from Mercy Hospital (T., pp. 60–61); that continued physiotherapy, possible injections, manipulations, and finally a spinal fusion may in the future be of benefit to her and improve her condition (T., pp. 21–23).

1949); United States v. Alex Dussel Iron Works, 31 F.2d 535 (5th Cir. 1929); Crumrine v. Jones & Laughlin Steel

Corp., 104 F.Supp. 92 (W.D.Pa.1951); Slepski v. Dravo Corp., 104 F.Supp. 89 (W.D.Pa.1951).

Even with respect to the emphysema which is incurable, there was evidence that medical science could benefit her and improve her condition by medicines and by hospital treatment (T., pp. 20–21, 165–167) as was demonstrated by her treatment in the Homestead Hospital in December, 1967 (plaintiff's Ex. 2). Plaintiff was entitled to maintenance until she was cured as far as possible.

Under the evidence, it is clear that as of trial, the date of maximum cure had not been reached with respect to the chronic sprains in her neck, shoulders and lower back. The date of maximum cure with respect to the emphysema was a difficult question; certain it is that she was cured of certain serious incidents of the disease in the Public Health Hospital and in the Homestead Hospital, and certain medical technique and medicines were of benefit to her,—whether such help was palliative or curative was for the jury to determine. The award for maintenance and cure was almost exactly the amount calculated, according to the stipulated weekly rates from May 26, 1965, to trial, by plaintiff's counsel who was careful to deduct the time she spent in the hospitals and the time she received maintenance (T., p. 347).

The defendant assigns as reason 2 in its motion for new trial in the civil action that "the case was tried by plaintiff on a theory with respect to the first count which was neither set forth in the pleadings nor in the pretrial statement or proceedings". In this respect defendant complains it did not have any notice "that the plaintiff intended to contend her sleeping quarters on defendant's vessels were smoke filled rooms" (defendant's brief, p. 17). We think defendant's argument is not well taken.

 Defendant had an obligation to care for the emphysematous plaintiff and not negligently thrust her into an environment permeated with irritating fumes and smoke. Fumes and smoke on diesel vessels, if they existed as the evidence established, are conditions and attendant circumstances of which defendant was surely bound to be aware. Moreover, with regard to plaintiff, the defendant was put on notice by Dr. Charles L. Winek's report concerning the toxicological properties of diesel fuel and exhaust, which report was attached to plaintiff's pretrial statement filed on May 16, 1967, and by Dr. Ilyas' medical report, a copy of which was mailed to defendant's counsel on February 3, 1968, that "exposure to fumes and gas from machineries" probably contributed to plaintiff's emphysema. No plea of surprise was made prior to or after plaintiff's counsel opened to the jury and announced plaintiff's position on the diesel fumes and smoke. We think defendant's claim that plaintiff changed theories is without merit.

Appropriate orders will be entered.