429 F.2d 1156
 Edna MROZ, Appellant in No. 17692,
v.
DRAVO CORPORATION, Appellant in Nos. 17693 and 17694.
 Nos. 17692, 17693 and 17694.
 United States Court of Appeals, Third Circuit.
 Argued May 4, 1970.
Decided July 27, 1970.
 
 Hymen Schlesinger, Pittsburgh, Pa., for Edna Mroz.
 Frederick N. Egler, Egler, McGregor & Reinstadtler, and Bruce R. Martin, Pittsburgh, Pa., for Dravo Corp.
 Before HASTIE, Chief Judge, and MARIS and FREEDMAN, Circuit Judges.
 OPINION OF THE COURT
 MARIS, Circuit Judge.
 
 
 1
 The plaintiff, Edna Mroz, claiming to be a seaman employed by the defendant Dravo Corporation to work as a cook and maid aboard its towboats navigating the Ohio River and its tributaries, filed a civil action in the United States District Court for the Western District of Pennsylvania on July 6, 1965. The complaint asserted three separate causes of action based upon negligence under the Jones Act, 46 U.S.C.A. 688, and upon unseaworthiness under the maritime law. The first count of the complaint alleged that in March or April 1962 the plaintiff developed pulmonary emphysema which was aggravated by the defendant's failure to furnish her maintenance and cure and instead continuing to employ her and by employing her at work beyond her capacity to May 1965, resulting in permanent aggravation of her illness. The second count involved injuries alleged to have resulted from an accident early in March 1961. This count was subsequently amended by the plaintiff in order to set forth her excuse for the delay in suing on the claim. The third count involved injuries asserted to have resulted from an accident which occurred on May 26, 1965 on board the defendant's M/V Freedom. In each count the plaintiff claimed damages for pain and suffering, for loss of earnings and for impairment of earning power. On August 12, 1965 the plaintiff filed a libel in admiralty based on the same subject matter asserted in the civil action and in which she sought maintenance at the rate of $8.00 per day and $50,000 in damages for failure to provide maintenance and cure. The two cases were later consolidated for trial.
 
 
 2
 The defendant answered the complaint and the libel admitting that the plaintiff had been employed from time to time from June 27, 1942 to March 23, 1965 as a seaman; it admitted that the plaintiff had been treated at the United States Public Health Service Hospital at Baltimore for pulmonary emphysema, chronic sinusitis and other ailments from February 13 to March 8, 1962 when she was discharged as fit for duty with a diagnosis, inter alia, of improved pulmonary emphysema. It also admitted that the plaintiff had reported an accident on March 4, 1961. By way of defense to the first two counts of the civil complaint and the cognate claims of the libel the defendant contended, inter alia, that both the 1962 and 1961 claims were barred by the three years statute of limitations imposed by the Jones Act, 45 U.S.C.A. 56, and by laches. With respect to the third count involving the 1965 accident, the defendant denied that the plaintiff was a crew member on the day of the accident because the M/V Freedom had been withdrawn from navigation in March 1965 and remained so until after May 1965 due to a strike by its licensed personnel.
 
 
 3
 A preliminary trial to a jury was held, which was confined to the jurisdictional issues thus raised with respect to count three. The evidence showed that the M/V Freedom was tied up at the defendant's dock on the Ohio River during a strike of its masters, pilots, mates and engineers which had started on March 31st and ended in the middle of June 1965. In early May the defendant had called back to work certain members of the National Maritime Union who were not on strike, including the plaintiff. Her duties were to cook meals for the deck hands and the landing men and to clean. She had the option of returning home each evening but sometimes she slept on the vessel. The deckhands were painting the kitchen, dining room and other parts of the vessel and it was being cleaned. The plaintiff was hurt on May 26, 1965 when she fell in the kitchen of the vessel. At the close of the plaintiff's evidence the defendant moved for a directed verdict which was denied. Two interrogatories were submitted to the jury, namely, whether the M/V Freedom was in navigation on May 26, 1965 and whether the plaintiff was a member of the crew of that vessel on that day. The jury answered both questions in the affirmative. The defendant then moved for judgment n.o.v. which was denied.
 
 
 4
 The two cases were tried on the merits to a jury. The plaintiff's claims under count one of the complaint and the cognate portion of the libel were limited to the three years immediately preceding July 6, 1965, the date the complaint was filed. At the close of plaintiff's case, the defendant rested without calling any witnesses and renewed its motion for a directed verdict on all counts of the complaint and the libel. The trial judge granted the motion as to count two of the complaint, the 1961 claim, and the cognate portion of the libel, on the ground that this claim was barred by the statute of limitations and unexcused laches. The remaining claims were submitted to the jury which returned verdicts in the sum of $18,000 in the civil action for damages and in the sum of $7,200 in the admiralty suit for maintenance and cure, upon which judgments were entered. The plaintiff then moved for a new trial and the defendant sought judgment n.o.v. on the first and third counts. Both motions were denied by the district court in a well-considered opinion by Judge Marsh, 1968, 293 F.Supp. 499. These appeals followed. The plaintiff at our docket No. 17692 seeks a new trial in the civil action claiming error in three respects. The defendant at our docket Nos. 17693 and 17694 appeals from the judgments entered in the civil and admiralty actions, respectively, claiming it was entitled to binding instructions on count one and the cognate claim of the libel on the merits and dismissal of the third count and the cognate portion of the libel on the ground that the plaintiff was not a member of the crew of a vessel in navigation on the day of the 1965 accident.
 
 
 5
 On the plaintiff's appeal her first contention is that the trial judge erred in directing a verdict on the claim involved in the second count of the complaint and the related portion of the libel which referred to the accident of March 4, 1961. With respect to this occurrence, the plaintiff testified that she was mopping the floor of the vessel and when she wrung out the mop the steel pin holding one of the rollers of the bucket gave way causing her foot to slip and the bucket to upset. She fell backward sustaining injuries to her head and neck. She reported the accident and later was sent to the Ohio Valley Hospital for skull x-rays, which proved to be negative. She went home on her seven days leave, returning to work thereafter and continuing in her employment, although she suffered neck pain, until May 26, 1965 when she had another accident, which is the subject of count three. It is not argued that the 1961 claim was not barred by the statute but it is urged that the trial judge erred in ruling that no substantial evidence of excusable delay had been presented. The plaintiff's amendment to this count setting up her excuse for the delay averred that the defendant had notice of the accident on the day it occurred, and through an examination by its physicians, but that she had not filed an earlier claim because she had lost no time from work and she had been informed by defendant's physician that he could find nothing wrong with her and she was afraid to antagonize her employer. She further averred that no prejudice had resulted to the defendant by her delay. No evidence, however, was produced to support her allegation that she did not prosecute her claim promptly due to fear of antagonizing her employer.
 
 
 6
 It is settled that delay may be excused when occasioned by special circumstances beyond the control of the injured or ill seaman,[1] and that under special circumstances a defendant may be estopped from asserting the statute of limitations or laches as a bar to the prosecution of the seaman's action.[2] The sufficiency of the special circumstances which are relied upon to excuse the late instituting of suit must be judged in the light of the equities of the particular case.[3] The district court held that the testimony of the plaintiff that she knew she had a right of action against the defendant but did not bring a timely suit because she did not lose any wages and because the doctor had told her nothing was wrong with her, did not reveal exceptional circumstances which in equity could excuse her delay. We do not think that the court erred in so ruling under the circumstances of the case.
 
 
 7
 The plaintiff strongly urges that it was for the defendant to come forward and prove that her delay was prejudicial. We cannot agree. This court in Lipfird v. Mississippi Valley Barge Line Company, 1962, 310 F.2d 639, 641-642, stated 'that by analogy to the statutory limitation imposed upon Jones Act negligence claims laches on the part of a plaintiff seaman will be presumed if he fails for more than three years after an accident to assert unseaworthiness as a ground for recovery for personal injuries suffered therein. We have also held that such delay on the part of the plaintiff will bar the assertion by him of unseaworthiness as a ground for recovery unless he overcomes the presumption of inexcusable delay and detriment to the defendant resulting from the delay by pleading and proving facts which do excuse the delay and show that it has been in no way detrimental to the defendant.' Contrary to the plaintiff's contention that her delay was excusable, her testimony showed that she had no intention of bringing suit on the 1961 accident within the permissible period for she stated that after she had been hospitalized in the Mercy Hospital in June and July 1965 for medical care following her May 1965 accident, 'Not one person came in to see how I was getting along or sent a card' and that she had signed the papers instituting her action in July 1965 'because not one person was interested enough to even see how I was.' (Tr. 117-118).
 
 
 8
 The plaintiff also urges that the trial judge erred in holding that there was no evidence that during the three years preceding July 6, 1965 the defendant had breached its duty to provide her with maintenance with respect to the injuries sustained in March 1961 or that the plaintiff had suffered aggravation of those injuries from the defendant's failure to furnish adequate and proper medical care. Our examination of the record discloses no evidence to support her contentions and we are satisfied that the trial judge was right in this regard. We conclude accordingly that the trial judge did not err in directing a verdict on the 1961 claim.
 
 
 9
 The plaintiff's next contention is that the trial judge erred in submitting to the jury the issue of contributory negligence on her part with respect to the claims involved in counts one and three of the complaint. On the other hand, the defendant urges with respect to count one that the plaintiff failed to make out a case of negligence on the part of the defendant as the proximate cause of her aggravated emphysema and that with respect to count three she failed to prove that the M/V Freedom was in navigation on May 26, 1965, the date of her accident. The defendant accordingly contends that the trial judge erred in refusing to grant its motions for a directed verdict as to these counts as well as its subsequent motions for judgment n.o.v. on each of these counts.
 
 
 10
 We turn first to the defendant's contentions with respect to count one. In considering them we bear in mind, as did the trial judge, that courts are not free to reweigh the evidence and set aside a verdict merely because the jury could have drawn different inferences or conclusions or because judges think that another result would be more reasonable.[4] We must accept as true all the facts favorable to the plaintiff which the evidence tends to prove and draw all reasonable inferences against the defendant.[5] Viewing in this light the evidence submitted at trial in this case, it became the duty of the trial judge, as it is of this court upon these appeals, to determine whether as a matter of law the plaintiff's evidence made out a case upon which the law will afford relief.[6]
 
 
 11
 Judge Marsh, in the opinion of the district court on the defendant's motion for judgment n.o.v. on count one, analyzed the evidence and discussed the inferences and conclusions of negligence on the part of the defendant which the jury could have drawn therefrom, as follows:
 
 
 12
 'At the trial it appeared that Mrs. Mroz, a long-time maid and cook in the employ of the defendant aboard its river towboats, developed emphysema prior to 1962. Suffering from shortness of breath, dyspnea, and weakness, orthopnea and paroxysmal coughing, and pain in the mid and low back. On February 13, 1962, she was admitted to the United States Public Health Hospital in Baltimore, where she was treated for pulmonary emphysema. Improved, she was discharged on March 8, 1962 as fit for duty, with a discharge diagnosis, inter alia, of pulmonary emphysema. Plaintiff gave the fit for duty slip to Dr. Marshall, the defendant's medical examiner in charge of its medical department, who examined her. * * * Notwithstanding his knowledge of her emphysema, he certified plaintiff back to work as a cook and maid on board defendant's diesel motor vessels. In these capacities, she continued to work on these vessels until the spring of 1965. Throughout this period she was on medication and for portions thereof was an out-patient of the United States Public Health Service in Pittsburgh.
 
 
 13
 'The jury could have found that it was negligence on the part of the defendant's medical examiner to permit her to work on defendant's diesel motor vessels where she was continually forced to breathe noxious fumes and smoke which permeated those boats at times during the night and day. * * * The vessels, including the bedrooms of the cook and maid were frequently filled with diesel fumes and smoke, and on some of the boats leaks had developed in the exhaust pipes which increased the fumes and smoke inside. * * * In addition, it was undisputed that the captains and the crew of the diesel vessels knew of plaintiff's emphysema and were aware that she was frequently short of breath and in a weakened condition * * * that at times she could not do her work and her fellow seamen had to help her do the work. * * * The jury could have found that it was negligence on the part of the captains to permit her to work on their vessels in her emphysematous and weakened condition. Unquestionably, a master has paternal responsiblities to the members of his crew. The defendant, through its captains and doctor, occupies a position of guardianship to seamen as the wards of the admiralty. Spellman v. American Barge Line Co., 176 F.2d 716, 719 (3d Cir. 1949).
 
 
 14
 'From the evidence the jury could reasonably have found that the irritating gases to which she was regularly exposed from March, 1962, to the spring of 1965, and the occasional damp and cold weather in the boats, aggravated her condition. There was undisputed medical testimony that the fumes and smoke had a continuous traumatic effect on plaintiff's diseased lungs * * * that they were dangerous to her health * * * that they aggravated her emphysematous condition * * * and that the disease could have been arrested if she had not been so exposed. * * * The jury could have concluded that defendant had assigned her duties which were beyond her capacity, and that this in conjunction with regular inhalation of smoke and fumes not only aggravated the emphysema but hastened the onset of total disability. It could have found that plaintiff was permanently disabled by her emphysema in November of 1965. * * *
 
 
 15
 'The fact that the Public Health Hospital in March, 1962, gave plaintiff a fit for duty slip is not conclusive of her fitness to work aboard ships permeated with noxious gases. It was only one factor to be considered by the jury on the issue of negligence. Where there is evidence that the ailing plaintiff was in fact not fit for duty aboard diesels, the defendant is liable for the consequences despite the fit for duty slip. Also, the plaintiff's efforts to work while suffering from emphysema would not exonerate defendant from liability for its negligence in permitting her to work on diesel vessels where she could not escape the noxious fumes and smoke. Aware of her affliction since March, 1962, defendant had the ancient obligation to properly care for the plaintiff-seaman. Cortes v. Baltimore Insular Line, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932). * * * It had a duty not to subject her on its boats to the hazards of exposure to cold and damp weather and to noxious gases which irritated her damaged lungs. The evidence supports a finding of negligent failure to provide proper care and defendant is liable for the consequential damages. These damages, i.e., pain and suffering and diminution of earning power, merge into the damages sustained in the accident of May 26, 1965, complained of in the third count.' (293 F.Supp. 503-504)
 
 
 16
 Upon our review of the record we are wholly in accord with the district court in this regard.
 
 
 17
 The defendant also argues that it would be grossly unjust to permit recovery by the plaintiff on count one of the complaint on the theory that negligent or unseaworthy exposure to diesel fumes and smoke aggravated her emphysema because that theory had not been developed in the pleadings prior to trial. The argument was rejected by the district court on the ground that the defendant had adequate notice of this theory of the plaintiff prior to trial in reports which it had received. We agree that there is no merit in this contention of the defendant.
 
 
 18
 The defendant urges that the case at bar is governed by the decision of this court in Potter Title & Trust Co. v. Ohio Barge Line, 1950,184 F.2d 432, a suit for negligence under the Jones Act, where a judgment which the district court had entered in favor of the plaintiff was reversed. We find no merit in this contention, however, for the cases are clearly distinguishable on their facts. In cases of this nature, where the liability of a defendant is predicated upon negligence and where it is contended that the plaintiff had failed to observe the degree of care required under the circumstances, each case must necessarily stand on its own particular facts. In the Potter Title & Trust Co. case the majority of this court concluded that the defendant's negligence had not been proved. In the present case, as we have indicated above, the trial judge found that there was sufficient evidence of the defendant's negligence with respect to aggravation of plaintiff's emphysema to present a jury question. 'The test,' the Supreme Court tells us in Rogers v. Missouri P.R. Co., 1957, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493, under the Federal Employers' Liability Act, which test is equally applicable here, 'of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence.' We conclude that the trial judge did not err in holding that the plaintiff made out a case of negligence on the part of the defendant under count one sufficient to go to the jury.
 
 
 19
 We turn then to the plaintiff's contention that the trial judge erred in submitting to the jury the issue of contributory negligence with respect to the emphysema claim. The plaintiff's argument is that there was no evidence which would establish the existence of any negligence on the part of the plaintiff, that the burden was on the defendant to prove such contributory negligence and that it failed to do so. Generally, it has been said that contributory negligence is the neglect of the duty imposed upon a person to exercise ordinary care for his own protection and safety which is a legally contributing cause of an injury.[7] In determining whether an injured person has been guilty of contributory negligence the standard of conduct to which he must conform is that of a reasonably prudent person under the circumstances. If a person by his own action subjects himself unnecessarily to danger which should have been anticipated and is injured thereby he is guilty of contributory negligence. It is true that the burden of proof is on the defendant to prove contributory negligence. But this does not mean that the burden must be discharged by the defendant's own evidence, for he may avail himself of any evidence supplied by the plaintiff which bears on the issue, and contributory negligence may in fact be established by the plaintiff's evidence alone.[8] It is enough to take the case to the jury on the issue of contributory negligence if the sum of the evidence leaves the issue in doubt, for it is the jury's province to resolve the doubt. It is only when, from the evidence presented at the trial, a jury could not properly find a lack of due care by the plaintiff that it is prejudicial error to charge the jury on that issue and on its diminishing effect upon any verdict it might find in favor of the seaman-plaintiff.[9]
 
 
 20
 In summarizing the evidence on this question Judge Marsh, in the opinion of the district court, said:
 
 
 21
 'The plaintiff's testimony emphasized that during the period from 1962 to the spring of 1965 she suffered acutely on board the defendant's diesel vessels from diesel fumes and smoke. * * * She testified that when it was hot, her bedroom filled up with smoke, and when it was windy, fumes permeated the kitchen. She claimed these fumes burned her throat and chest; that they made it hard for her to breathe and she felt clogged and stuffed up; that she coughed a lot more than usual; and that they made her emphysema worse. She testified that on board the diesels she breathed in smoke and fumes daily. * * * From the testimony of plaintiff, Amelda Perry and Earl Fowler, the jury could have found that in her emphysematous condition, the assigned work was beyond her physical capacity. * * * There may have been an economic problem, but notwithstanding the alarming symptoms and obnoxious conditions and her incapacity, there is no evidence that she complained to Dr. Marshall, to the captains, or that she requested defendant to transfer her to work ashore. In our opinion, from these circumstances also, there was an issue of contributory negligence for the jury to consider.' (293 F.Supp. 505-506).
 
 
 22
 We agree with the district court that the jury could have found the plaintiff guilty of contributory negligence when she knew that she was being exposed to conditions which made her ill and weak and she did not complain of those conditions or ask to be transferred to other work.
 
 
 23
 The plaintiff makes a second contention on this issue, namely, that there can be no issue of contributory negligence in the breach of defendant's obligation to furnish maintenance and cure. It is sufficient answer to this to say that it clearly appears from the record that there was no issue of maintenance and cure presented to the jury under count one of the complaint or the cognate portion of the libel and the jury was properly instructed that the plaintiff was not entitled to maintenance and cure prior to May 26, 1965.
 
 
 24
 The plaintiff also argues that where a seaman has knowledge of a defective or hazardous condition but nevertheless continues in his employment, he cannot be charged with contributory negligence since this amounts to assumption of risk. It is true that the statutory provisions barring assumption of risk as a defense in these cases have been held to apply and to eliminate the question of contributory negligence where a plaintiff had no alternative but to subject himself to dangerous conditions in his place of employment.[10] But where, as here, the seaman has the possibility of securing relief by informing his superiors of the unsafe conditions but continues to work without doing so he may be found to be contributorily negligent.[11] It will be remembered that the doctrine of comparative negligence, under which contributory negligence operates merely to reduce the damages, not to bar their recovery, is well established in the maritime law.[12] We think that the trial judge did not err in submitting to the jury the issue of contributory negligence with respect to the emphysema claim of count one.
 
 
 25
 This brings us to the contentions of the parties with respect to the plaintiff's claim under count three of the complaint and the cognate portion of the libel. The facts presented by the plaintiff and the inferences and conclusions to be drawn therefrom are well set out by Judge Marsh in his opinion for the district court, as follows:
 
 
 26
 'On May 26, 1965, the plaintiff in the course of her employment by the defendant was caused to trip and fall by a rag negligently left lying on the floor of the kitchen of the defendant's motor vessel Freedom by seamen who had been painting. This rag also presented an unseaworthy condition. From this fall, plaintiff sustained sprains in her neck, shoulder and lower back and an injury to her knee. At the time of trial, the jury could have found that she was permanently and totally disabled. * * *
 
 
 27
 'Following this accident she was treated at the Mercy Hospital and discharged with a recommendation that she continue physiotherapy. Defendant failed to provide this.
 
 
 28
 'After her discharge from the hospital, she was examined by Dr. Bernard J. Johnston on July 22, 1965, and received five or six treatments from him, the last one being on December 5, 1965. Dr. Johnston diagnosed her condition as injury to the neck, lumbar spine, spraintype with instability, muscular distrophic reaction in the right shoulder and chronic emphysema. He found kyphosis, thoracic scoliosis, and instability of the lumbosacral joint or lower lumbar vertebrae and lumbar lordosis. * * * She did not improve from the treatment. Dr. Johnston prescribed a corset and collar which plaintiff wears when able. * * * In November, 1965, she procured from Dr. Johnston a certificate * * * to return to work on a trial basis * * * however, she did not return to work. * * * The certificate stated that she could work 'within the specific limitations of her permanent disability as previously noted on examination. Limited to light duty.' The permanent disability referred to was the emphysema.
 
 
 29
 'She was hospitalized in the United States Public Health Hospital at Baltimore from June 7, 1966 to June 24, 1966, where the diagnosis was chronic low back strain, chronic cervical strain, chronic emphysema, and possible early cirrhosis. She was discharged as 'not fit for duty.'
 
 
 30
 'On December 9, 1967, she was admitted to the Homestead Hospital because of a severe status asthmaticus. The diagnosis was status asthmaticus with pulmonary emphysema. She was discharged on December 30, 1967. At this hospital she was attended by Dr. S. T. Ilyas and Dr. J. J. Lebovitz.
 
 
 31
 'At the trial it was obvious that she was short of breath, and she testified she could not work. The jury could have found from the evidence that emphysema and the chronic sprains in her neck, shoulder, and lower back rendered her totally and permanently disabled from May 26, 1965 to time of trial, with a truncated life expectancy.' (293 F.Supp. 505).
 
 
 32
 We turn first to the defendant's contention on its motion for judgment n.o.v., namely, that the trial judge erred in not directing a verdict as to this claim on the ground that the vessel was not in navigation at the time the accident occurred. The cases upon which the defendant relies in support of its contention are all distinguishable on their facts.[13] Whether or not on May 26, 1965 the plaintiff was a member of a crew of a vessel and whether that vessel was then in navigation were questions of fact[14] which the jury in this case decided upon a full and fair charge by the trial judge. We conclude that the district court did not err in denying the defendant's motions for a directed verdict and for judgment n.o.v. on the third count.
 
 
 33
 We find the plaintiff's contention that it was error for the trial judge to submit to the jury her issue of contributory negligence with respect to the 1965 accident to be equally without merit. The plaintiff had been called back to work on this vessel on a cleaning and painting project while it was tied up during the strike. The plaintiff's evidence was to the effect that rags like the one on which she said she tripped were used by the painters for drop cloths on the vessel instead of heavier and more substantial drop cloths. The district court stated in its opinion:
 
 
 34
 'Although the defendant presented no testimony, there was evidence that when plaintiff tripped and fell, the offending rag was in plain sight on the floor of the lighted kitchen. We think from these circumstances there was an issue of contributory negligence and the instructions were proper. Cf. Gans v. Baltimore & Ohio Railroad Company, 319 F.2d 802 (3d Cir. 1963).' (293 F.Supp. 505).
 
 
 35
 We agree. The principles of contributory and comparative negligence which we have already discussed with respect to count one are equally applicable to this claim. We conclude that the trial judge did not err in holding that the evidence sufficiently raised an issue of contributory negligence with respect to the 1965 accident for submission to the jury.
 
 
 36
 The plaintiff's final contention is that it was error for the trial judge to refuse to instruct the jury, in accordance with a request submitted by the plaintiff, that the issuance of a 'fit for duty' slip by the United States Health Service was not conclusive as to her physical condition. The trial judge affirmed the request as a correct statement of the law but stated that he would not read it to the jury or specifically include it in his instructions to them. The judge did, however, submit to the jury the question whether the defendant was guilty of negligence in permitting the plaintiff to work following her hospitalization. Under the circumstances, we agree with the trial judge that the specific instruction requested was not needed. We find no merit in plaintiff's contention in this regard.
 
 
 37
 The judgments of the district court will be affirmed.
 
 
 
 [1]
 McDaniel v. Gulf & South American Steamship Co., 5 Cir. 1955, 228 F.2d 189. See, also, Sobosle v. United States Steel Corporation, 3 Cir. 1966, 359 F.2d 7, 12
 
 
 [2]
 Glus v. Brooklyn Eastern District Terminal, 1959, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770; Longo v. Pittsburgh and Lake Erie Railroad Co., 3 Cir. 1966, 355 F.2d 443; Taylor v. Crain, 3 Cir. 1952, 195 F.2d 163
 
 
 [3]
 Kane v. Union of Soviet Socialist Republics, 3 Cir. 1951, 189 F.2d 303, 305
 
 
 [4]
 Tennant v. Peoria & Pekin Union R. Co., 1944, 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520; Sentilles v. Inter-Caribbean Shipping Corp., 1959, 361 U.S. 107, 110, 80 S.Ct. 173, 4 L.Ed.2d 142
 
 
 [5]
 Makowsky v. Povlick, 3 Cir. 1959, 262 F.2d 13, 14-15
 
 
 [6]
 Schad v. Twentieth Century-Fox Film Corporation, 3 Cir. 1943, 136 F.2d 991, 993
 
 
 [7]
 Restatement, Torts 2d, 463, 464, 466
 
 
 [8]
 29 Am.Jur. 2d Evidence 135, 136, 30 Ibid. 1123
 
 
 [9]
 Paluch v. Erie Lackawanna Railroad Company, 3 Cir. 1968, 387 F.2d 996, 999
 
 
 [10]
 Smith v. United States, 4 Cir. 1964, 336 F.2d 165, 168-169
 
 
 [11]
 DuBose v. Matson Navigation Company, 9 Cir. 1968, 403 F.2d 875
 
 
 [12]
 Socony-Vacuum Oil Co. v. Smith, 1939, 305 U.S. 424, 431-432, 59 S.Ct. 262, 83 L.Ed. 265
 
 
 [13]
 Desper v. Starved Rock Ferry Co., 1952, 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205 (sight-seeing motorboat laid up on shore for the winter and for reconditioning); Nelson v. Greene Line Steamers, 6 Cir. 1958, 255 F.2d 31 (excursion vessel had made its last trip and was tied up for the winter); Hillcone S.S. Co. v. Steffen, 9 Cir. 1943, 136 F.2d 965 (Vessel out of commission for indefinite period with intent to recondition); Antus v. Interocean S.S. Co., 6 Cir. 1939, 108 F.2d 185 (vessel being prepared for winter quarters); Seneca Washed Gravel Corporation v. McManigal, 2 Cir. 1933, 65 F.2d 779 (night watchman on board vessel in winter quarters)
 
 
 [14]
 Senko v. LaCrosse Dredging Corporation, 1957, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404